UNITED STATES of America, Appellee,

v.

**Efraim NATANEL a/k/a Efriam Natanel, Defendant, Appellant.**

No. 89–1953.

United States Court of Appeals, First Circuit.

Heard April 4, 1991.
Decided July 9, 1991.

Francis K. Morris, with whom Morris & Howard, was on brief, Framingham, Mass., for defendant, appellant.

Frank J. Marine, Atty., U.S. Dept. of Justice, Washington, D.C., with whom Wayne A. Budd, U.S. Atty., and Jonathan Chiel and Stephen P. Heymann, Asst. U.S. Attys., were on brief, Boston, Mass., for the U.S.

Before CAMPBELL, SELYA and CYR, Circuit Judges.

SELYA, Circuit Judge.

Defendant-appellant Efraim Natanel, sometimes described in the record as Efriam Natanel, having dodged several of the government's legal bullets, was convicted on the last remaining count of a multi-count indictment. Natanel labors mightily in an effort to show that his conviction was unlawful. He does not succeed.

## I. BACKGROUND

Fourteen persons, Natanel included, were indicted by a federal grand jury for a variety of drug-related offenses. In final form, the indictment contained twenty-seven counts, only four of which involved Natanel. Count 2 alleged that Natanel and eleven others (including several supposed members of an earlier conspiracy charged in count 1, *see infra*), conspired to possess and distribute cocaine from March to April of 1988 in violation of 21 U.S.C. § 846. Count 18 charged Natanel with distributing more than five hundred grams of cocaine to one Uri Ben'Hanan in May 1987 in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)(II) and 18 U.S.C. § 2. Counts 22 and 23 charged Natanel with unlawful use of the telephone during the life of the count 2 conspiracy in violation of 21 U.S.C. § 843(b).

To put matters into perspective, we limn the other charges contained in the indictment. Count 1 alleged that six people, not including Natanel, collogued to possess and distribute cocaine. The conspiracy was said to begin on or before August 1986 and to end in or about March 1988. Counts 3 through 16 charged sundry persons, not including Natanel, with substantive counts of possession with intent to distribute cocaine on various occasions in violation of essentially the same statutes listed in count 18. Count 17 charged Shmuel David (who was also named in both conspiracy counts and in several specific-event counts) with engaging in a continuing criminal enterprise during 1986–1988 in violation of 21 U.S.C. § 848. Counts 19–21 and counts 24–27 charged various persons other than Natanel with communications offenses in contravention of 21 U.S.C. § 843(b).

Natanel and five other defendants were tried together.[1] Early on, Natanel moved

---

1. The quintet included David, Eliahu Abramson, Jaime Toro Aristizibal, Amparo Toro Aristizibal, and Yehuda Yarden. Abramson was acquitted. The other four were convicted on an assortment of charges. Their appeals were consolidated with Natanel's and argued as a group. Because Natanel was convicted only on count 18—a charge arising in the course of David's CCE but not implicating in so many words defendants other than Natanel—and because his appeal, though emerging from a shared background, presents a distinctive set of issues, we limit this

for a severance in respect to count 18. His motion was denied. Undaunted, he persisted in asserting his position. His perseverance finally paid a small dividend: after the evidence was in, the judge proposed that counsel separately argue, and the jury separately ponder, count 18. Natanel acquiesced, though making clear that he did not feel this modicum of relief was an adequate remedy for what he still perceived to be a prejudicial misjoinder. The government also acquiesced.

Once the several attorneys had summed up, the judge charged on all counts except count 18. Following jury deliberations, Natanel was acquitted on counts 2, 22, and 23. The trial was recessed at that juncture. The next day, the jurors resumed their deliberations and found Natanel guilty on count 18. He was subsequently sentenced to six years in prison and fined $20,000.

On appeal, Natanel raises a salmagundi of assigned errors. We reject them all, pausing to comment only upon (1) the allegations of prejudicial misjoinder, (2) two reasons of appeal stemming from the separate submission of count 18 to the jury without closing argumentation or supplemental instructions, (3) the sufficiency of the evidence concerning drug quantity, and (4) the district court's denial of a motion for new trial based on newly discovered evidence.

## II. JOINDER AND SEVERANCE

Natanel argues to us, as he repeatedly argued below, that count 18 was improvidently joined and should have been severed. His thesis implicates Rules 8(b) and 14 of the Federal Rules of Criminal Procedure. We discuss the two rules sequentially.

### A. *Joinder.*

██ In a case involving multiple defendants, Rule 8(b) governs joinder of defendants and offenses.[2] Under the rule, the government may charge serial transactions, and indict persons jointly, on the basis of what it reasonably anticipates being able to prove against the defendants, collectively, measured as of the time the indictment is handed up. *See United States v. Boylan*, 898 F.2d 230, 245 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990); *United States v. Martinez*, 479 F.2d 824, 828 (1st Cir. 1973). In the ordinary case, a rational basis for joinder of multiple counts should be discernible from the face of the indictment. *See Boylan*, 898 F.2d at 245; *United States v. Arruda*, 715 F.2d 671, 678 (1st Cir.1983). A defendant challenging such joinder must carry the devoir of persuading the trial court that a misjoinder has taken place. *See United States v. Luna*, 585 F.2d 1, 4 (1st Cir.), *cert. denied,* 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978). The remedy for misjoinder is severance. *See United States v. Williams*, 711 F.2d 748, 750 (6th Cir.), *cert. denied,* 464 U.S. 986, 104 S.Ct. 433, 78 L.Ed.2d 365 (1983).

██ Here, the government's theory was that the entire indictment, including count 18, constituted a single "series of acts or transactions" within the ambit of Rule 8(b). More specifically, the prosecution contended that codefendant David's continuing criminal enterprise (CCE), charged in count 17, adequately linked all the other counts together. The defense, relying heavily on the fact that the incident undergirding count 18 took place almost a year before the count 2 conspiracy allegedly began, thought differently: in its view, count 18 charged Natanel with an isolated sale of cocaine, unrelated to the other activities set out in the indictment, and thus, not reasonably classifiable as part of a series. We afford the trial court's resolution of this issue plenary re-

---

opinion to Natanel's case. The codefendants' appeals will be addressed separately.

**2.** The rule states:

Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Fed.R.Crim.P. 8(b).

view, *see, e.g., United States v. Mac-Donald & Watson Waste Oil Co.*, 933 F.2d 35, 58–59 (1st Cir.1991), mindful that mere similarity of acts, without more, cannot justify joinder. *See Boylan*, 898 F.2d at 245; *King v. United States*, 355 F.2d 700, 703 (1st Cir.1966). Should we find both misjoinder and actual prejudice, we must vacate the conviction. *See United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986).

■ In this instance, joinder was proper. We think that a CCE count can be a sufficient link between multiple codefendants and multiple offenses to warrant joinder when the CCE ties in the remaining counts in the indictment. *Accord United States v. Porter*, 821 F.2d 968, 971–72 (4th Cir.1987), *cert. denied*, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988). A CCE count is, after all, strikingly similar to a conspiracy count, *cf. United States v. Rivera–Martinez*, 931 F.2d 148, 152 (1st Cir. 1991) (where 21 U.S.C. § 846 conspiracy is used to show a CCE, cumulative punishment for both conspiracy and CCE charges constitutes double jeopardy), and it is settled that a conspiracy count can forge the needed linkage. *See Arruda*, 715 F.2d at 678; *cf. Boylan*, 898 F.2d at 245 (joinder deemed appropriate where RICO count "embrace[s] all of the acts or transactions upon which the other ... counts [are] based"). While the tie would perhaps be more easily visualized in this case if the substantive act charged in count 18 had been listed in the indictment as a predicate for the CCE count, we do not believe such an explicit cross-reference is required. *Cf., e.g., MacDonald & Watson*, 933 F.2d at 60 (joinder appropriate, even absent allegation of a conspiracy, "where a corporation and its employees are alleged to have committed the same illegal acts involving the same corporate site on several occasions"); *Pacelli v. United States*, 588 F.2d 360, 367 (2d Cir.1978) (joinder can be supported by conspiratorial activity even if the conspiracy is not charged in the indictment), *cert. denied*, 441 U.S. 908, 99 S.Ct. 2001, 60 L.Ed.2d 378 (1979); *United States v. Scott*, 413 F.2d 932, 934 (7th Cir.1969) (similar), *cert. denied*, 396 U.S. 1006, 90 S.Ct. 560, 24 L.Ed.2d 498 (1970).

■ *Porter* is our touchstone. There, the Fourth Circuit held that separate acts constituting separate offenses could be joined in a single indictment where "[a]ll those indicted were alleged to have participated in a drug importation and distribution scheme run by [one of the codefendants, charged with running a CCE]." *Porter*, 821 F.2d at 971. This is precisely the situation at hand. The indictment, through the count 2 conspiracy and the telephone counts, tied Natanel sufficiently to David's drug operation to allow joinder. Contrary to the thrust of appellant's asseveration, it is not a necessary precondition to joinder that a defendant be involved in each offense charged in an indictment; joinder is proper as long as there is some common activity binding the objecting defendant with all the other indictees and that common activity encompasses all the charged offenses. *Accord United States v. Kragness*, 830 F.2d 842, 861 (8th Cir.1987). In the matter at bar, David's CCE, described in the indictment as operative from at least August 1986 to April 1988, provided the mucilage which glued the indictment together.

We know that, at times, the evidence adduced at trial can validate a conclusion of relatedness, serving as an *ex post* assurance that joinder was a step founded on a reasonable, good faith basis in fact and not the result of prosecutorial bad faith. *See Boylan*, 898 F.2d at 245. So here, concerning the joinder of count 18 with the other charges. From early 1986 to the middle of 1987, one Jackie Amouyal received cocaine in the course of David's CCE operations. On two occasions in March and April of 1987, Ben'Hanan bought cocaine from Amouyal in Brookline, Massachusetts. Natanel was present during the latter sale. At that time, Amouyal told Ben'Hanan that he would be in Israel for a spell and that Natanel would be available as an understudy if Ben'Hanan needed drugs. A short while later, Ben'Hanan contacted Natanel for exactly that purpose—a contact which resulted in the count 18 transaction. Thus,

though the sale was not explicitly referenced as part of the CCE, a reasonable prosecutor could have thought the two to be sufficiently interconnected to justify their inclusion in the same indictment.

Joinder on the theory that count 18 was part of the series of transactions encompassed by the CCE was permissible. Hence, Rule 8(b) was not transgressed.

### B. *Severance.*

 Natanel has another string to his bow. Even though the remedy associated with misjoinder is the same as that associated with prejudicial joinder—severance—the rules which govern the two phenomena are analytically distinct and procedurally distinguishable. Pursuing this theme, Natanel posits that, even if joinder was allowable under Rule 8(b), count 18 nevertheless should have been severed pursuant to Rule 14.[3] Under the best of circumstances, "[t]his is a difficult battle for a defendant to win." *Boylan*, 898 F.2d at 246. Assuming lawful joinder, the nisi prius court has considerable latitude in deciding whether to sever counts for trial and its resolution of severance questions will be overturned only if that wide discretion is plainly abused. *See id.; Arruda*, 715 F.2d at 679. Moreover, when the district judge's discretion has been exercised to refuse severance, an appellant must "make a strong showing of prejudice" to gain a new trial. *United States v. Porter*, 764 F.2d 1, 12 (1st Cir.1985).

 Since Natanel was acquitted on all counts save count 18, it is hard to envision how the joinder of counts might have prejudiced him. The appellant speculates that he was hurt by evidentiary spillover—but the jury's demonstrated selectivity affords a reasonably good assurance that no injurious spillover effect occurred. The introduction of evidence against other defendants cannot realistically be viewed as having jeopardized Natanel's chances on count

18 when the jury proved willing to treat the case against Natanel on its own merits by acquitting him on the other counts. *Accord, e.g., United States v. Dworken*, 855 F.2d 12, 29 (1st Cir.1988); *United States v. Tashjian*, 660 F.2d 829, 834 (1st Cir.), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 681, 70 L.Ed.2d 646 (1981).

We also note approvingly that the court below minimized any possible prejudice by repeatedly instructing the jury to treat the defendants as individuals and to consider each charge separately. We have consistently derived comfort from the presence of such prophylactic measures when appeals from severance denials come before us, *see, e.g., Tashjian*, 660 F.2d at 834, and we do so again today. The court here provided yet a further palliative, segregating the deliberations on count 18 from the case as a whole. Under these circumstances, Natanel cannot make the strong showing of prejudice sufficient to warrant reversal of the trial court's ruling on his Rule 14 motion.

### III. THE CLOSING ARGUMENT THAT NEVER WAS

After the parties had rested, the district court proposed that the jury consider everything except count 18, on the understanding that, after verdicts were returned, count 18 would then be sent to the jury. No one objected to this arrangement. All the attorneys, including Natanel's lawyer, delivered their summations. On May 23, 1990, the judge gave his instructions, telling the jurors not to consider count 18. Deliberations began on that day. On May 31, verdicts were returned. The jurors were given the choice of considering count 18 then and there or deferring the task until the next day. They selected the latter option.

On June 1, the jurors reported to court. The judge sent them to the jury room to consider count 18, without pausing for ei-

---

**3.** The rule states in pertinent part:

 If it appears that a defendant ... is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Fed.R.Crim.P. 14.

ther supplemental instruction or further arguments by the lawyers. Natanel's attorney was present when this was done and did not object. Indeed, the lawyers agreed, at an unrecorded conference with the trial judge, that additional closing arguments concerning count 18 were unnecessary.[4]

On appeal, Natanel acknowledges his trial counsel's waiver and refrains from any attack on the district court's handling of count 18 with respect to closing statements. Rather, he challenges counsel's decision to forgo the opportunity to deliver a final argument directed particularly at count 18. Although we believe that the contention is properly before us, we find it unpersuasive.

### A. *Timing of Appellate Review.*

■ We do not normally consider ineffective-assistance-of-counsel claims on direct appeal. *See, e.g., United States v. Costa,* 890 F.2d 480, 482–83 (1st Cir.1989); *United States v. Kobrosky,* 711 F.2d 449, 457 (1st Cir.1983). "The rule in this circuit is that a fact-specific claim of ineffective legal assistance cannot be raised initially on direct review of a criminal conviction, but must originally be presented to the district court." *United States v. Hunnewell,* 891 F.2d 955, 956 (1st Cir.1989).

■ A principal purpose for the rule is the need to marshal and evaluate evidentiary facts required to place the adequacy of a defendant's representation into proper perspective. Hence, where the critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration of an ineffective assistance claim, an appellate court may dispense with the usual praxis and determine the merits of such a contention on direct appeal. *See United States v. Jackson,* 918 F.2d 236, 243 (1st Cir.1990); *United States v. Caggiano,* 899 F.2d 99, 100 (1st Cir. 1990); *United States v. Freeze,* 707 F.2d 132, 138–39 (5th Cir.1983). We believe that this case falls within the aforestated exception to the overall rule. Counsel's alleged

omission was straightforward: he consciously chose to waive further oral argument. Neither side suggests that there is any need for further factfinding. There seems to be no valid reason why the claim cannot be assessed on the existing record, as the appellant urges us to do.

### B. *Ineffective Assistance.*

■ The Supreme Court has firmly established that the fundamental right to counsel contained in the sixth amendment is "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). A deprivation of effective legal assistance can result either when the government wrongly hinders the defense's ability to conduct its case or when defense counsel fails to perform with a reasonable degree of proficiency. *See Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063–64. Natanel's argument treads the second path.

■ The benchmark for determining whether a trial lawyer's performance has been constitutionally deficient is whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* In order to obtain a reversal on this ground, a criminal defendant must show both that counsel fell short of the applicable performance standard and that prejudice resulted. *See id.* at 687, 104 S.Ct. at 2064; *Chappee v. Vose,* 843 F.2d 25, 33 (1st Cir.1988). The performance standard is to be applied not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented. *See United States v. Bosch,* 584 F.2d 1113, 1121 (1st Cir.1978).

■ The Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the perform-

---

**4.** The agreement is evidenced by a stipulation on appeal. The stipulation also recites that the participants cannot recall whether anything was said at the chambers conference regarding the need for supplementary instructions on count 18.

ance standard is that of reasonably effective assistance under the circumstances then obtaining. *See Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064–65. The Court has described the acceptable "range of reasonable professional assistance" as "wide." *Id.* at 689, 104 S.Ct. at 2065. It follows, we think, that no particular set of rules can be established to define effective assistance, as hard-and-fast rules would inevitably restrict the independence and latitude counsel must have in making tactical and strategic decisions. At the bottom line, then, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.*

■ Given the odd situation which developed below, trial counsel's decision to waive a separate closing statement on count 18 strikes us as "a strategy choice ... well within the range of professionally reasonable judgments." *Id.* at 699, 104 S.Ct. at 2070; *see also Burger v. Kemp,* 483 U.S. 776, 794–96, 107 S.Ct. 3114, 3125–27, 97 L.Ed.2d 638 (1987); *Doucette v. Vose,* 842 F.2d 538, 543 (1st Cir.1988). After the jury acquitted Natanel on the other counts, counsel likely suspected that the jury was won over and that additional arguments could only impair his client's seemingly secure position. It was, therefore, reasonable for him to conclude that the sooner the jurors received count 18, the less new information was imparted, the better Natanel's interests would be served. By foregoing an additional summation, the lawyer precluded the prosecutor, who had fallen demonstrably flat in his initial attempt, from exercising a renewed opportunity to convince the jury of Natanel's guilt.

What is more, there was little left for the appellant's attorney to argue. For one thing, he had made extensive references to count 18 in his summation on the other counts. For another thing, the defense to count 18 centered around the credibility of one witness, Ben'Hanan, and that witness had already been fiercely attacked.

In litigation as in life, there is much to be said for maxims such as "if it ain't broke,

don't fix it" and "quit while you're ahead." Viewed in such a light, the decision not to give a separate closing argument on count 18, while admittedly a gamble, was a reasonable strategic choice. That counsel's selection of a stratagem may, in retrospect, have proved unsuccessful, or even unwise, is not the issue. *See Chappee,* 843 F.2d at 33; *Bosch,* 584 F.2d at 1121. Under the circumstances, Natanel's legal representation was not constitutionally infirm. *See, e.g., Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066 (given adequate investigation, a lawyer's "strategic choices ... relevant to plausible options are virtually unchallengeable" on sixth amendment grounds); *Jackson,* 918 F.2d at 243 (no inadequate representation if the attorney's conduct can be viewed as "a reasonable tactical decision" under the attendant circumstances); *United States v. Walters,* 904 F.2d 765, 772 (1st Cir.1990) (similar).[5]

## IV. THE OMITTED JURY INSTRUCTIONS

■ In a variation on somewhat the same theme, Natanel says that the district court erred by failing to charge the jury on count 18. The facts are as follows. The judge instructed the jury at considerable length before submitting the other counts for consideration. The parties agree that those instructions included all the standard instructions necessary to enable a jury to decide a criminal case, e.g., burden of proof, presumption of innocence, reasonable doubt, unanimity, and the like. The court also gave case-specific instructions on the particular offenses involved, excepting count 18. After the jurors returned verdicts on the other counts, the judge asked them in open court, with the lawyers present, if they wanted to consider count 18 "without further argument, without further instruction by the court this afternoon, or you may return tomorrow morning to decide that count." Neither lawyer objected to the court's inquiry or to its proposal. The jury chose to return the next day. It

---

5. In light of our conclusion that counsel's tactical choice was a professionally acceptable one, characterized by a reasonable degree of lawyerly proficiency, we need not address the second prong of the *Strickland* test.

neither asked for, nor received, any supplementary instructions. A guilty verdict ensued.

Natanel complains that reversible error occurred when the judge failed to charge the jury specifically on count 18. As appellant concedes, the absence of an objection below means that we can only reverse if the lack of such instructions amounted to plain error. *See Hunnewell,* 891 F.2d at 956; *United States v. Griffin,* 818 F.2d 97, 100 (1st Cir.), *cert. denied,* 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987); *see also* Fed.R.Crim.P. 52(b). We recently commented in a criminal case:

> The plain error hurdle is high. *See, e.g., United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985) (plain errors are limited to those which "undermine the fundamental fairness of the trial"); *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936) (plain errors are restricted to those which "are obvious, or … seriously affect the fairness, integrity or public reputation of judicial proceedings"). It follows, unsurprisingly, that the plain error exception is to be used "sparingly," only to prevent justice from miscarrying. *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982). Inasmuch as plain error "gives a defendant a free second bite at the cherry, [it] is to be narrowly limited." *United States v. Rivera,* 872 F.2d 507, 509 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989).

*Hunnewell,* 891 F.2d at 956.

To be sure, a trial court's failure to charge on the essential elements of an offense can constitute plain error. *See, e.g., United States v. Natale,* 526 F.2d 1160, 1167 (2d Cir.1975), *cert. denied,* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976); *United States v. King,* 521 F.2d 61, 63 (10th Cir.1975). It understates matters to say that the doctrine will only apply if the asserted error "would likely have affected the outcome." *United States v. Rivera,* 872 F.2d 507, 509 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 71, 107 L.Ed.2d 38

(1989). In the last analysis, the plain error doctrine, even in the context of jury instructions, is "not … concerned with technical error or with prejudicial error," *McMillen v. United States,* 386 F.2d 29, 35 (1st Cir.1967), *cert. denied,* 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968), but is concerned only with "those errors so shocking that they seriously affect the fundamental fairness and basic integrity of the proceedings conducted below." *Griffin,* 818 F.2d at 100.

Ordinarily, we would have slight hesitancy in branding a total failure to instruct a criminal jury as plain error. The case at hand, however, is far from ordinary. The jury received full and complete instructions before the first stage of its deliberations. Because the court charged on several counts (namely, counts 3 through 16) against other defendants pegged to the same legal framework that supported count 18, *the charge included instructions as to the elements of the very offense with which Natanel was charged in count 18.* To be sure, the specific instructions were given in connection with similar counts against other defendants and were not pinpointed to count 18 itself. Nonetheless, in the absence of a contemporaneous objection, we see no reason why those instructions were not also adequate to allow the jury to perform its task fairly and competently during the second stage of its deliberations.

In the unique circumstances of this case, we conclude that there was no plain error. Having found no similar situations in the case law, we turn to first principles. The purpose of requiring instructions on the elements of an offense is to ensure that, if the jury convicts, it will be convicting a defendant for the crime with which he is charged. Even if the jury has the indictment before it or hears a rote recital of the statutory language, instructions may be required; after all, the language used in statutes may not be familiar to lay jurors, or common words may take on unaccustomed meanings in particular legal settings. *See, e.g., United States v. Polowichak,* 783 F.2d 410, 415–16 (4th Cir.1986) (plain error found where jury was given indictment,

but their "attention was never called to the ... allegations ... they were never read to the jury nor were they explained"); *United States v. Bryant,* 461 F.2d 912, 920 (6th Cir.1972); *cf. United States v. De La Cruz,* 902 F.2d 121, 123 (1st Cir.1990) (court need not explain statutory phraseology to jury where words were such that "the jury could not reasonably have doubted the[ir] tenor"). The necessity for instruction, then, flows from the fundamental principle that the jury must understand what it is that it is sworn to do.

Here, that necessity was adequately addressed. The jury had already been instructed, albeit with respect to other counts, as to the legal significance of the statutes and the elements of the offense upon which count 18 depended. That being so, we think that it would have been sufficient, although by no means ideal, had the judge told the jurors, immediately before they retired to consider count 18, something like: "You have already been instructed on all the elements of count 18 in my earlier charge with respect to counts 3 through 16. Please apply those same principles to the evidence which you have heard respecting count 18 to determine whether the government proved the defendant, Natanel, guilty beyond a reasonable doubt of committing the offense charged in count 18." While it was unquestionably error for the court to neglect even this minimally sufficient instruction, we do not think it was plain error. It is reasonable to presume, under the circumstances, that the jury, in considering count 18, did exactly what our hypothetical charge portends, i.e., used the knowledge acquired from the earlier instructions to perform its function in regard to count 18. This presumption is strengthened because the jury had before it the indictment, which limned count 18 in straightforward terms and clearly showed that count 18's statutory provenance was similar to the provenance of counts 3 through 16.

Our conclusion that the plain error hurdle was not vaulted in this instance is fur-

ther fortified in that Natanel's defense centered around the credibility of a single government witness, rather than around any particular element of the offense. *Cf., e.g., United States v. Madrid Ramirez,* 535 F.2d 125, 127 (1st Cir.1976) (jury instructions not deficient to the point of plain error where, *inter alia,* the case "did not involve 'a particularly sensitive defense,' nor were 'the facts adduced at trial ... so complex and confusing that an understanding of the issues would be beyond the grasp of the jury' " (citations omitted)). The fact that the jury's verdict came down to a judgment call on credibility renders it highly unlikely that the failure to reinstruct tilted the outcome, caused justice to miscarry, or adversely affected the integrity of the trial process.

For these reasons, we reject the appellant's claim of plain error. There was no fundamental unfairness.

## V. DRUG QUANTITY

■ The verdict on count 18 necessitated proof that the quantity of drugs distributed by Natanel was in excess of 500 grams.[6] Before us, Natanel contends that the only evidence presented at trial concerning drug weight was Ben'Hanan's testimony—and Ben'Hanan, according to Natanel, was not credible. Inasmuch as Natanel did not raise this issue in his motion for judgment of acquittal in the district court, we can only grant relief if doing so is necessary to avert a clear and gross injustice. *See United States v. Bynum,* 567 F.2d 1167, 1171 (1st Cir.1978) (per curiam); *United States v. Kilcullen,* 546 F.2d 435, 441 (1st Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977).

■ We discern no inequity in holding the appellant to the consequences of his procedural default. Ben'Hanan testified that the cocaine sale involved one kilogram (1000 grams). We do not think it unreasonable for jurors to believe that the testimony of a man experienced in drug deals was

---

6. The statute of conviction provides a stiff penalty for any person who knowingly or intentionally distributes "500 grams or more of a mixture or substance containing a detectable amount of ... (II) cocaine...." 21 U.S.C. § 841(b)(1)(B)(ii)(II).

sufficient to establish an approximate drug quantity. There is no requirement that drug quantities be proven by expert testimony or evidence of measured weights. *See United States v. McMahon*, 861 F.2d 8, 12 (1st Cir.1988) (neither direct evidence nor scientific analysis required to prove substance contains THC); *United States v. Drougas*, 748 F.2d 8, 15 (1st Cir.1984) (existence of marijuana can be proved by circumstantial evidence); *cf. United States v. Sarasti*, 869 F.2d 805, 807 (5th Cir.1989) (district judge's determination of weight for sentencing purposes valid even where the "determination of the amount of cocaine turned entirely upon an assessment of the relative credibility" of two non-expert witnesses). Viewing the record, as we must, in the light most hospitable to the jury's verdict, *see United States v. Ruiz*, 905 F.2d 499, 502 (1st Cir.1990), the lay testimony was sufficient to establish that Natanel agreed to purvey more than half a kilogram of cocaine.

## VI. NEWLY DISCOVERED EVIDENCE

The appellant's final claim is that the district court erred in not granting his motion for a new trial based on newly discovered evidence, Fed.R.Crim.P. 33, filed some ten weeks after the guilty verdict was returned. As we have mentioned before, the government's principal evidence on count 18 was Ben'Hanan's testimony. The drug sale supposedly occurred near a Brookline restaurant. The witness said that the buyer and seller transacted their seamy business in the interior of a black Chevrolet Blazer. He also said that he had previously been inside the Blazer, purchasing cocaine from Amouyal. The new evidence revealed that Amouyal's Blazer was in the custody of an automobile dealer on the critical date. Hence, it could not have been used by Natanel when the deal went down.

The district judge denied the appellant's motion. He stated that, to grant it, he would have to be convinced that Ben'Hanan's testimony about the Blazer was deliberately false—and the judge was not so persuaded. Natanel argues that the district court misapprehended the law and misapplied the relevant standard, thus arriving at the wrong ruling. We agree with the appellant's premise but not with his conclusion.

The proper standard for granting or denying a motion for new trial based on newly discovered evidence was set out in *United States v. Wright*, 625 F.2d 1017 (1st Cir.1980). We wrote:

> A motion for new trial on the basis of newly discovered evidence will ordinarily not be granted unless the moving party can demonstrate that: (1) the evidence was unknown or unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not due to lack of diligence by the defendant; (3) the evidence is material, and not merely cumulative or impeaching; and (4) it will probably result in an acquittal upon retrial of the defendant.

*Id.* at 1019. If any of the four factors of the *Wright* test are lacking, then a Rule 33 motion must be denied. *Id.* Evaluating such a motion calls into play the presider's sense of the ebb and flow of the recently concluded trial. For that reason, the district court must be given wide rein to assess the evidence and judge the credibility of witnesses. Its decision will not be overturned on appeal except for a manifest abuse of discretion.

In cases where newly discovered evidence is offered to impeach the credibility of a witness, we have observed that it may sometimes be appropriate to substitute a less stringent criterion for the "probability of reversal" factor (the fourth of the *Wright* factors). In particular, if satisfied that testimony at trial was deliberately false, it is only necessary that the district court find that "without the false testimony the jury 'might have reached a different conclusion.'" *Wright*, 625 F.2d at 1020 (quoting *Larrison v. United States*, 24 F.2d 82, 87 (7th Cir.1928)). But here, the court went astray. It did not merely consider interchanging the two possible versions of the fourth *Wright* factor. Rather, having determined that the challenged testimony was not deliberately false, the court rejected Natanel's motion outright. This

was error: a defendant's failure to show that testimony was deliberately false when given does not automatically slam the door on a Rule 33 motion; it only means that the movant cannot substitute a relatively more relaxed criterion for the "probability of reversal" criterion.

 Thus, the court below should have proceeded to apply the classic *Wright* test. It omitted this further step. The error, however, was harmless inasmuch as Natanel's newly discovered evidence did not meet either the third or fourth prongs of the classic test. As a matter of law, wielding the proper yardstick, the motion could not have been granted.

Turning first to materiality, it is evident that the only possible use of the new evidence would be to impeach Ben'Hanan's credibility. This is so because the fact that the sale took place in Amouyal's Blazer, or not, was only derivatively material to the conviction. If true, the import of the testimony was to show that (1) Ben'Hanan and Amouyal knew each other, (2) Natanel and Amouyal knew each other, and (3) Amouyal was out of town. These facts were scarcely at issue and were, at any rate, solidly established by other evidence at trial.

The likelihood that the newly discovered evidence would have impeached Ben'Hanan's credibility was faint. We doubt that the jury, even if it credited the new evidence, would have been impressed. That the drugs were sold in Amouyal's truck was of minor importance to the witness' story, the government's case, or the ultimate issue (guilt or innocence). Should the jurors have concluded that Ben'Hanan confused one truck with another, such a conclusion would probably not have undermined the witness' credibility significantly since his ability to distinguish vehicles was irrelevant to an assessment of the crucial segments of his testimony. The newly discovered evidence was, therefore, not material in the *Wright* sense.

 The information fares no better on the fourth prong of *Wright*. It seems highly unlikely that the evidence would have had the slightest effect on the trial's outcome. At the most, the proffer could be expected to do service as but another of a series of impeachment efforts mounted by the defense. If the jury was not convinced by the others—some of which possessed considerably more impeaching force than the "Blazer" evidence—it is Panglossian to speculate that the new tidbit would have swayed the balance. For newly discovered evidence to warrant a retrial in a criminal case, the existence of the required probability of reversal must be gauged by an objectively reasonable appraisal of the record as a whole, not on the basis of wishful thinking, rank conjecture, or unsupportable surmise.

*Wright* itself offers a usable parallel. There, we found no probability of reversal where the newly discovered evidence represented, at best, a fourth attempt to impeach a witness. We stated: "Since the jury chose to believe [the witness] in spite of the testimony of three defense witnesses (including appellant) that directly contradicted her, we do not see how the addition of [one more witness'] testimony would 'probably produce an acquittal.'" *Id.* at 1020 (citation omitted). The situation at bar is analogous. The appellant has not demonstrated the requisite probability of reversal.

To recapitulate, then, Natanel's newly discovered evidence lacked materiality as substantive proof on count 18, and was both fribbling and cumulative with respect to impeachment. On an objective reading of the record, adding this evidence to the trial mix would not "probably result in an acquittal upon retrial of the defendant." *Id.* at 1019. The Rule 33 motion could not have been granted. *See United States v. Vazquez*, 857 F.2d 857, 865 (1st Cir.1988).

## VII. CONCLUSION

We need go no further. Upon close perscrutation of the record, the forceful arguments advanced by able appellate counsel, and the applicable law, we are fully persuaded that the jury's verdict was on the mark. Natanel was fairly tried and justly

convicted. Because there was no reversible error, we reject his appeal.

*Affirmed.*