<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                                            

No. 91-1588

                   UNITED STATES OF AMERICA,

                     Plaintiff, Appellee,

                              v.

                        STEVEN McGILL,

                     Defendant, Appellant.

                                            

         APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF RHODE ISLAND

    [Hon. Raymond J. Pettine, Senior U. S. District Judge]

                                            

                            Before

                     Breyer, Chief Judge,

                Selya and Cyr, Circuit Judges.
                                            

    David N. Cicilline for appellant.
    Marie K. McElderry, Attorney, United States Department of
Justice, with whom John R. Dunne, Assistant Attorney General, David
K. Flynn, Attorney, United States Department of Justice, Lincoln C.
Almond, United States Attorney, and Anthony DiGioia, Assistant
United States Attorney, were on brief for appellee.

                                            

                                            

         SELYA, Circuit Judge.  Defendant-appellant Steven McGill
was indicted by a federal grand jury on a charged violation of 18
U.S.C.  242 (1982).  The government alleged in substance that
McGill was a correctional officer at a state prison in Rhode
Island; that on July 10, 1984, while on duty, he subjected an
inmate, Roger Alessio, to a simulated version of "Russian
Roulette"; that, in the course of this perilous fandangle, McGill
aimed a firearm at Alessio's head and pulled the trigger; and that
the gun discharged, sending a bullet into Alessio's skull, killing
him and thus violating his civil rights.  Following trial in the
United States District Court for the District of Rhode Island, a
jury found McGill guilty as charged.  The district court sentenced
him to a twelve-year prison term.  McGill appeals.  We affirm.
         We need not linger long over this appeal.  We discuss the
assigned errors in decurtate fashion, indicating the general basis
for our rulings.  In our view, no more is merited.
                              A.
         The first two assignments of error relate to the district
court's jury instructions.  In fine, McGill alleges that the court
erred both in defining "willfulness" and in describing section
242's "under color of . . . law" requirement.  The short,
conclusive response to these importunings is that no contempo-
raneous objection was lodged in either respect when the district
court delivered its jury instructions.  Hence, the objections were
waived.  
         To be sure, an appellate court can vacate a defendant's
conviction on the basis of instructional error, even in the absence
of a contemporaneous objection, if the error is "plain."  See
United States v. Natanel, 938 F.2d 302, 311 (1st Cir. 1991); United
States v. Mejia-Lozano, 829 F.2d 268, 272 (1st Cir. 1987); United
States v. Griffin, 818 F.2d 97, 100 (1st Cir.), cert. denied, 484
U.S. 844 (1987).  But, although the possibility is often discussed,
the actuality is seldom seen.  When all is said and done, "[t]he
plain error hurdle is high."  United States v. Hunnewell, 891 F.2d
955, 956 (1st Cir. 1989).  
         In this instance, the hurdle is insurmountable.  While
the appellant's points appear to possess a patina of plausibility
when bits and pieces of the district court's charge are wrested out
of context, the patina dissolves completely when the charge, as
needs must, is "taken in its entirety."  Griffin, 818 F.2d at 100.
The judge's instructions, as a whole, spelled out the elements of
the offense and the government's burden of proof.  They also
adequately communicated the theory of McGill's defense and the
workings of the presumption of innocence.  In the last analysis, we
are hard pressed to discern instructional error to any degree  a cry imitative of conduct
occurring in the film.  The prosecution sought to show the Russian
Roulette scene at McGill's trial.  Defense counsel endeavored to
avoid an excerpted rendition.  In what seems to have been a
compromise, both sides agreed to let the jury see the entire film,
rather than just the single scene.  Recognizing that his
acquiescence in the admission of the evidence at trial constitutes
a waiver, see Fed. R. Evid. 103(a)(1) (requiring timely objection
to admission of evidence), McGill attempts to resurrect the point
on appeal by a claim that allowing the jury to view the motion
picture constituted plain error.  See Fed. R. Evid. 103(d) (with
respect to admission of evidence, appellate court may notice "plain
errors affecting substantial rights" even if such errors were not
brought to the trial court's attention); Fed. R. Crim. P. 52(b)
(similar).
         This claim sounds a particularly dissonant chord.
Counsel jointly presented the trial judge with a stipulation that
a certain piece of evidence  should be received
into evidence.  Given the stipulation and the attendant
circumstances, any error in admitting the film could not possibly
have been apparent to the trial judge when the proffer was made.
It is, therefore, not surprising that, in cases like this one,
where a party has stipulated to the admission of particular
evidence, courts have been especially slow to find plain error when
the party belatedly decides that the stipulation was improvident.
See, e.g., United States v. Vogt, 910 F.2d 1184, 1192 (4th Cir.
1990), cert. denied, 111 S. Ct. 955 (1991); United States v. Sisto,
534 F.2d 616, 624 n.9 (5th Cir. 1976) (warning against dangers of
"sandbagging").
         We do not go so far today as to hold that where evidence
is received pursuant to stipulation, plain error can never be
found.  In the end, our focus must be on whether the "fundamental
fairness of the trial" has been undermined, see United States v.
Young, 470 U.S. 1, 16 (1985); or, put another way, whether, apart
from deploying plain error, "a miscarriage of justice would
otherwise result."  United States v. Frady, 456 U.S. 152, 163 n.14
(1982).  We are convinced that, in the case at hand, these rubrics
cannot conceivably apply.  We explain briefly.
         The movie was clearly relevant.  See Fed. R. Evid. 401
(evidence is relevant if it has "any tendency to make the existence
of any fact that is of consequence to the determination of the
action more probable or less probable than it would be without the
evidence").  So long as evidence is relevant, it is hen's-teeth
rare that we, from the vista of a cold appellate record, can
justifiably say, particularly in the absence of a contemporaneous
objection, that the evidence's probative value was so outweighed by
the specter of unfair prejudice that its introduction constituted
reversible error.  Indeed, the cases are legion in which we, and
other courts, have refused to overturn verdicts notwithstanding the
trial judge's allowance of evidence which, though relevant, was
grisly, sensational, or otherwise daunting.  See, e.g., Foley v.
Lowell, ___ F.2d ___, ___ (1st Cir. 1991) [No. 91-1016, slip op. at
9-11] (approving lower court's admission of evidence anent
particularly vile incident of police brutality); Real v. Hogan, 828
F.2d 58, 61 (1st Cir. 1987) (evidence of plaintiff's bloodstained
hands); United States v. Cintolo, 818 F.2d 980, 997-98 (1st Cir.)
(evidence of order to commit murder), cert. denied, 484 U.S. 913
(1987); United States v. Moreno Morales, 815 F.2d 725, 739-40 (1st
Cir.) (evidence of murder), cert. denied, 484 U.S. 966 (1987);
Kealohapauole v. Shimoda, 800 F.2d 1463, 1466 (9th Cir. 1986)
(habeas court upholds admission of autopsy film into evidence),
cert. denied, 479 U.S. 1068 (1987).   We think it crystal clear
that the district court did not commit plain error in accepting
counsels' agreement and permitting the jury to see "The Deerhunter"
from start to finish.
                              C.
         The appellant's final assignment of error piggybacks on
the contentions previously discussed.  He claims to have been
deprived of proficient representation because his trial attorney
failed to object to the jury instructions and stipulated to the
cinematic display.  Whatever the merits of this claim  it is not ripe for review.
         We do not ordinarily consider complaints of ineffective
assistance on direct appeal.  See, e.g., United States v. Costa,
890 F.2d 480, 482-83 (1st Cir. 1989); United States v. Kobrosky,
711 F.2d 449, 457 (1st Cir. 1983).  To the contrary, "[t]he rule in
this circuit is that a fact-specific claim of ineffective legal
assistance cannot be raised initially on direct review of a
criminal conviction, but must originally be presented to the
district court."  Hunnewell, 891 F.2d at 956.  While we have made
an occasional exception where, for example, "the critical facts are
not genuinely in dispute and the record is sufficiently developed
to allow reasoned consideration of an ineffective assistance
claim," Natanel, 938 F.2d at 309 (citing representative cases),
McGill's case falls squarely within the general rule, not the
exotic exception to it.  The relevant facts, especially those
concerning the reasons behind trial counsel's adoption of certain
strategies, are unclear.  Moreover, the trial judge, who is
obviously in the best position to evaluate what was done and why,
has never passed upon the adequacy of the defendant's
representation.  In a nutshell, McGill is jumping the gun by
attempting to raise the issue on direct appeal.

Affirmed.

</body>

</html>