# United States Court of Appeals
## For the First Circuit

No. 18-1963

SANDRA I. FLORES-RIVERA,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Kayatta, Selya, and Barron,
Circuit Judges.

Lydia Lizarribar-Masini for appellant.
Robert P. Coleman, III, Assistant United States Attorney,
with whom W. Stephen Muldrow, United States Attorney, Mariana E.
Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate
Division, and Thomas F. Klumper, Assistant United States Attorney,
Senior Appellate Counsel, were on brief, for appellee.

October 29, 2021

**KAYATTA, Circuit Judge**. Sandra Flores-Rivera ("Flores") is currently serving a twenty-year term of imprisonment for various drug-trafficking offenses. Shortly after her jury returned its verdict against her, the government revealed that it had failed to produce several clearly relevant documents that plainly called into question the credibility of the government's key witnesses against Flores and her co-defendants. Forcefully claiming the government's defalcation violated their due process rights under Brady v. Maryland, 373 U.S. 83, 87 (1963), Flores's co-defendants convinced this court, in their direct appeals, to vacate their convictions and remand for a new trial. United States v. Flores-Rivera (Flores I), 787 F.3d 1, 21 (1st Cir. 2015). Flores, however, did not raise the Brady violation on her simultaneous and unsuccessful appeal. Id. at 15 n.7. She now seeks vacatur of her federal conviction and sentence pursuant to 28 U.S.C. § 2255, arguing that her appellate counsel was constitutionally ineffective under Strickland v. Washington, 466 U.S. 668, 687 (1984), for failing to raise the Brady claim on direct appeal. The district court denied Flores's motion to vacate, concluding that there was no reasonable probability that the impeachment evidence would have made a difference at her trial. For the reasons that follow, we reverse the judgment of the district court and remand to the district court with instructions to grant Flores's motion to vacate her conviction.

- 2 -

## I.

Our opinion in Flores I describes at length the relevant factual background for this collateral appeal. We repeat only the essential facts and add detail where appropriate.

The government alleged that Flores and forty-six other people participated in a drug-trafficking conspiracy spanning various parts of eastern Puerto Rico. Sandra Flores went to trial with three other defendants -- Sonia Flores-Rivera, Carlos Omar Bermúdez-Torres ("Omar"), and Cruz Roberto Ramos-González ("Ramos").

At trial, the bulk of the evidence against Flores and her co-defendants came from three cooperating witnesses: Harry Smith Delgado Cañuelas ("Delgado"), a seller for the drug-trafficking organization, who was the government's "star witness"; Andy Marcano, a drug runner; and Xiomara Berríos-Rojas ("Berríos"), a drug runner and seller. All three testified that Flores was both a runner and a seller of cocaine, crack, and marijuana at a drug point located at the Victor Berríos Public Housing Project in Yabucoa, Puerto Rico.

The cooperating witnesses also helped the government present non-testimonial evidence against Flores. The government had a police surveillance video that showed Flores doing something at a drug point. Berríos and Delgado provided explanatory narrative, claiming that what Flores was doing was distributing

crack and tallying up drug money.  Berríos also testified about the cryptic contents of notebooks seized from the home of Sandra "La Caderúa" Fernandez, a bookkeeper for the drug-trafficking organization.  On one page of the notebook, the initials "SF" appear three times.  In two of those instances, "10:00" precedes "SF," and in the third instance "-100" precedes "SF."  Berríos claimed that "SF" meant Sandra Flores, not Sandra Fernandez or Sonia Flores, and that the entries meant that Sandra Flores had delivered drug proceeds at ten o'clock and borrowed $100 from those proceeds.

After the jury returned guilty verdicts against all defendants, the government belatedly disclosed documents created prior to trial that could have been used to impeach the cooperators' testimony.  First, the government belatedly disclosed a photocopy of what appears to be a letter (or perhaps part of a letter) from Delgado to the lead prosecutor.  In the letter, Delgado described himself as the government's "best cooperator" and pleads for assistance from the prosecutor for his family:

> I need you to help me please.  I promised you . . . to do everything you said and I have done it to the point that you know how this has gotten, we have more than we expected, more evidence and more strength for the case . . . .

At the bottom of the second of the two photocopied pages, Delgado wrote, "I hope you can help me, I will" before the photocopy cuts

off. The government was unable to produce the letter to show whether Delgado continued on a third page to complete his sentence. And the district court was unable to determine definitively whether the photocopy produced was complete. Second, the government belatedly disclosed notes that Delgado kept of conversations he had with other cooperators while they were in prison together. The notes indicated that Delgado was encouraging Berríos and Marcano to testify. Third, the government belatedly disclosed "rough notes" that federal agents took during an interview with another cooperating witness who never testified at trial. The rough notes showed that Marcano knew that Delgado and Berríos were communicating in prison.

Based on this newly disclosed evidence, Ramos and Omar moved for new trials. Flores joined Ramos's motion. The defendants pointed out to the district court what later struck us as obvious -- the letter would have provided a powerful tool for directly impeaching the testimony of the three cooperators, given their repeated claims at trial that they had not been communicating together, and especially given the prosecution's inexplicable inability to account for the entire letter. After holding several evidentiary hearings, the district court nevertheless denied all of the defendants' post-trial motions.

On direct appeal, Ramos and Omar pressed the Brady issue forcefully and successfully. Considering the effect of the

evidence's nondisclosure, we observed that "the possibility that the three linchpin witnesses colluded to fabricate incriminating testimony goes to the very core of this case and potentially compromises every piece of factual evidence the government had against Ramos and Omar." Flores I, 787 F.3d at 20. And we could not "say for sure what Delgado, [Berríos], and [Marcano] would have said had they been confronted with this evidence on the stand." Id. at 21. We therefore remanded their cases with instructions to grant them new trials because we found "it to be 'reasonably probable' that the impeachment evidence would have caused the jury to acquit Ramos and Omar." Id.

Inexplicably, Flores's appellate counsel[1] did not join in raising the Brady issue on appeal even though it had been preserved below, and even as counsel for the other appellants in the very same case were pressing the issue. Instead, Flores's counsel on appeal raised two other issues that had not even been preserved below: a challenge to the trial court's evidentiary rulings and a claim that Flores's twenty-year mandatory-minimum sentence violated the Constitution and 18 U.S.C. § 3553(a). The evidentiary arguments did not overcome the rigors of plain-error review, and the sentencing arguments ran into "a stone wall of

---

[1] At trial, Flores was represented by Anita Hill-Adames. Flores requested the appointment of new counsel for her appeal, and this court appointed H. Manuel Hernández to represent her.

controlling precedent." See id. at 22-25. We also pointed out that counsel left the Brady argument on the table, observing that Flores's "trial counsel joined Ramos and Omar in petitioning the district court for a new trial" and that her appellate counsel did not renew the argument despite his "clear[] aware[ness] of his ability to adopt a co-appellant's arguments in a consolidated case . . . since he reserved his right to do so in Sandra's opening brief." Id. at 15 n.7.

Proceeding pro se, Flores subsequently moved to vacate her sentence pursuant to 28 U.S.C. § 2255. The same district court judge again denied relief, concluding that even if the evidence had been disclosed, there was no reasonable probability that she would have been acquitted at trial because the video evidence proved her participation in the drug-trafficking conspiracy.

We certified for appeal Flores's claims that the government violated Brady by failing to disclose the impeachment evidence and that her counsel was constitutionally ineffective for failing to raise the argument on direct appeal. We appointed new counsel for Flores; the appeal was briefed; and the panel heard oral argument.

## II.

To prevail on a claim for relief under 28 U.S.C. § 2255(a), Flores must show that her sentence "was imposed in violation of the Constitution or laws of the United States" or "is

- 7 -

otherwise subject to collateral attack."  To make that showing, Flores argues that the government violated her due process rights as construed in Brady by failing to produce the relevant documents. But because Flores did not raise this argument on her direct appeal, she must show both that she had "cause" not to raise it and that she suffered "actual prejudice" as a result.  United States v. Frady, 456 U.S. 152, 167-68 (1982).  We address each requirement in turn.

**A.**

Flores correctly asserts that she can demonstrate adequate "cause" if she can establish that by failing to raise the Brady issue on direct appeal her appellate counsel rendered ineffective assistance of counsel as defined in Strickland.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).

So we turn our attention to the merits of Flores's Strickland argument.  The Strickland standard for ineffective assistance has two prongs:  (1) counsel's performance must have been deficient; and (2) the defendant must have been prejudiced by counsel's deficient performance.  466 U.S. at 687.  We address these prongs in reverse order.  See id. at 697 (explaining that a court can address the deficient performance and prejudice prongs in any order).

- 8 -

**1.**

Strickland's prejudice prong requires a defendant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The parties both presume that the relevant "proceeding" in this instance is the prior appeal. In this case, this presumption makes sense because the prior appeal could not have been successful under Brady absent a finding that the timely disclosure of the withheld documents would have created a "reasonable probability that, had the evidence been disclosed to the defense, the result of the [trial] would have been different." Kyles v. Whitley, 514 U.S. 419, 433-34 (1995) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985) (opinion of Blackmun, J.) and id. at 685 (White, J., concurring in part and concurring in the judgment)). Thus, whether counsel's omission of the Brady claim from Flores's direct appeal caused prejudice under Strickland depends on the merits of the Brady claim itself.

A Brady violation has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

As we explained in Flores I, the withheld evidence was clearly favorable to the defendants because it quite substantially called into question the credibility of the three key government witnesses. See 787 F.3d at 18-21. And there is no doubt that it was not timely produced. So the Brady claim that was not presented by Flores on direct appeal would have turned entirely on whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the [trial] would have been different." Kyles, 514 U.S. at 433-34 (quoting Bagley, 473 U.S. at 682 (opinion of Blackmun, J.) and id. at 685 (White, J., concurring in part and concurring in the judgment)).

The Supreme Court has explained that when a court assesses the "reasonable probability" of a different result, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles, 514 U.S. at 434. The Court has also made clear that materiality is "not a sufficiency of the evidence test," i.e., a defendant need not show "that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." Id. at 434-35; accord Strickler, 527 U.S. at 290.

That the government's failure to produce clear Brady material caused prejudice would seem to be established by our

- 10 -

opinion sustaining the appeals of Flores's co-defendants.  We noted there how the government led with its chin at trial by presenting a case predicated almost exclusively on the testimony of cooperating witnesses with little, if any, corroboration.  See Flores I, 787 F.3d at 18.  The withheld notes could be said to show Delgado coaching the other two cooperators.  See id.  And the notes strongly suggested that the cooperators had lied at trial when they denied coordinating their testimony.  See id.  We observed, too, that the withheld letter "provid[ed] a powerful tool in the hands of any good trial counsel to call into question the credibility of both the key witness and, implicitly, the lead prosecutor."  Id. at 19.

The government nevertheless argues that we should find the withheld evidence less helpful to Flores because there was other evidence of Flores's guilt.  In so arguing, the government points only to the surveillance video and a page from one of the notebooks found in the apartment of Sandra Fernandez.  But, as we learned at oral argument, government counsel on appeal had never even looked at the video, relying instead on the description of the video by one of the three cooperating witnesses.  Our own review of the video confirms that it does show Flores appearing to hand something to someone and receive something in return.  It certainly raises a suspicion about what she is doing.  But without the narrative testimony supplied by the cooperating witnesses, the

likelihood that the video showed Flores engaged in the drug-trafficking specifically charged in the indictment is less than clear. Presumably this is why the government at trial proffered the narration and why the government on appeal relies only on that narrative in making its assertions about the record.

As to the notebook on which the government relies, Flores's connection to the notebook relies entirely on testimony by one of the impeachable cooperating witnesses, who asserted that the initials "SF" refer to Flores rather than the other persons with similar initials mentioned in the evidence. In short, the government's case against Flores depended quite heavily on the largely uncorroborated testimony of the three cooperators. Hence, she would have prevailed on the Brady issue just like her co-defendants had she raised the issue. And for that reason, she establishes prejudice under Strickland.

## 2.

So we turn next to the other required showing under Strickland: that the failure to raise the Brady claim was the result of deficient performance by appellate counsel. Deficient performance occurs when counsel's actions fall below "an objective standard of reasonableness." Strickland, 466 U.S. at 688. In our review of counsel's performance, we make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

conduct from counsel's perspective at the time." Id. at 689. And we must indulge "a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" Harrington v. Richter, 562 U.S. 86, 109 (2011) (quoting Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam)).

This court considers a wide range of actions to be reasonable strategy. A decision by counsel that "prove[s] unsuccessful, or even unwise," may nevertheless be a reasonable strategic choice. United States v. Natanel, 938 F.2d 302, 310 (1st Cir. 1991) (holding that, after defendant's acquittal on several counts, counsel made a reasonable "gamble" by not giving a closing argument on a count separately submitted to jury); accord Murchu v. United States, 926 F.2d 50, 58 (1st Cir. 1991). A defendant must show that "given the facts known [to counsel] at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." Rossetti v. United States, 773 F.3d 322, 327 (1st Cir. 2014) (alteration in original) (quoting Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)).

This is a daunting hurdle to overcome in order to establish deficient performance under Strickland. But that hurdle is by no means insurmountable. A defendant's appellate counsel performs deficiently by "ignor[ing] issues [that] are clearly stronger than those presented." Smith v. Robbins, 528 U.S. 259,

- 13 -

288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)). Forgoing an argument is not a reasonable strategic decision when "there [i]s absolutely no downside" to objecting to an error, Prou v. United States, 199 F.3d 37, 48 (1st Cir. 1999), or when the omitted argument would not "detract[] from" but would "buil[d] upon" another challenge, Cirilo-Muñoz v. United States, 404 F.3d 527, 531 (1st Cir. 2005).

Here, any reasonable attorney handling Flores's appeal would have known of the Brady claim's availability even after a cursory review of the district court docket and the arguments offered by Flores's co-defendants. Trial counsel had clearly preserved the issue by moving for a new trial based on the Brady claim. So, the issue of deficient performance turns on whether any competent attorney aware of the Brady claim's availability would have eschewed it on appeal.

Even under Strickland's deferential standard, the record compels the conclusion that Flores's counsel performed in an objectively unreasonable fashion. Appellate counsel opted to forgo an obviously serious, preserved Brady claim in favor of two dubious plain-error challenges, one of which was foreclosed by binding precedent. That choice resembles rejecting a lifeboat in favor of two lily pads. Nor was there any reason to choose among the various potential challenges to the conviction. The short brief had plenty of room. And counsel could have adopted the bulk

- 14 -

of the co-defendants' briefs on this point had counsel wished to do so.  See Flores I, 787 F.3d at 15 n.7.  Fecklessness is not a strategy.

We have no difficulty making this determination on the record before us.  "[T]he critical facts are not genuinely in dispute and the record is sufficiently developed to allow reasoned consideration of an ineffective assistance claim."  Natanel, 938 F.2d at 309 (considering an ineffective assistance claim on direct appeal); cf. United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993) (explaining that ineffective assistance determinations will often, but not always, benefit from factual development in the district court).  Under these circumstances, no evidentiary hearing is needed to say that counsel's actions were objectively unreasonable under Strickland.  Any competent lawyer would have understood that a Brady claim on these facts is stronger than most arguments made in good faith in criminal appeals. We can conceive of no justification for leaving it on the cutting room floor.  The decision to do so was deficient under Strickland.  Flores therefore establishes the requisite "cause" required to overcome her failure to raise the Brady claim on direct appeal.

**B.**

A showing of prejudice under Strickland and Brady suffices under Frady to establish the required "actual prejudice" in a proceeding under 28 U.S.C. § 2255.  See Bucci v. United

- 15 -

<u>States</u>, 662 F.3d 18, 29, 38 n.20 (1st Cir. 2011) (explaining that the prejudice requirements of <u>Strickland</u> and <u>Brady</u> require the same showing as the prejudice requirement of <u>Frady</u>); <u>see also</u> <u>Joseph</u> v. <u>Coyle</u>, 469 F.3d 441, 462-63 (6th Cir. 2006). Flores has thus shown both cause and actual prejudice. Hence Flores's motion to vacate her sentence pursuant to 28 U.S.C. § 2255 must be granted.

## III.

For the foregoing reasons, we <u>reverse</u> the judgment of the district court and <u>remand</u> to the district court with instructions to grant Sandra Flores-Rivera's motion to vacate her convictions and her sentence.