7 F.3d 219
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Efraim NATANEL, Defendant, Appellant.
 No. 93-1364.
 United States Court of Appeals,
First Circuit.
 September 24, 1993
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
 Efriam Natanel on brief pro se.
 A. John Pappalardo, United States Attorney, and Jonathan Chiel, Assistant United States Attorney, on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before Breyer, Chief Judge, Selya and Boudin, Circuit Judges.
 Per Curiam.
 
 
 1
 Defendant Efriam Natanel appeals from the grant of a motion under Fed. R. Crim. P. 36 to correct a clerical mistake in the judgment. The district court amended the judgment to include a four-year period of supervised release that, according to the government, had been verbally imposed by the sentencing judge but inadvertently omitted from the written judgment. Defendant argues that it was not, in fact, the judge's intention to impose such a sanction. He also contends that various procedural irregularities rendered the court's action here otherwise improper. We find each of these arguments without merit and therefore affirm.
 
 
 2
 On June 1, 1989, defendant was convicted by a jury of distributing more than 500 grams of cocaine to another individual, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)(II). See United States v. Natanel, 938 F.2d 302 (1st Cir. 1991) (affirming conviction on direct appeal), cert. denied, 112 S. Ct. 986 (1992).[1] The offense occurred in May 1987. At sentencing on September 15, 1989, Judge McNaught imposed a six-year prison term, a $20,000 fine, a $50 special assessment, and a four-year term of supervised release. Yet the written judgment, dated October 2, 1989, contained no reference to the period of supervised release. In November 1992, the government filed the instant motion to correct the judgment. Judge McNaught having retired in the interim, another district court judge received and summarily granted the motion without calling for a response from defendant; the judgment was accordingly amended to reflect the term of supervised release. Defendant submitted an opposition, which arrived after the court's order, and then a motion for reconsideration, which was summarily denied. This appeal followed.
 
 I.
 
 3
 It is clear that Judge McNaught intended to impose, and did impose, a term of supervised release at sentencing-despite an initial pronouncement to the contrary. The confusion appears to have stemmed from the fact that the government, when first recommending a sentence, failed to mention this sanction.[2] See Sent. Tr. at 2. The court, stating that it would "not go beyond the recommendations of the prosecutor," therefore announced that "there will not be a period of supervised release." Id. at 18. The government immediately revised its recommendation and argued that supervised release was mandatory under 21 U.S.C. § 841(b)(1)(B). The court, acknowledging a lack of familiarity with such requirement, eventually accepted this view after consulting the statute and explicitly included a four-year term of supervised release in the sentence thereafter imposed.[3]
 
 
 4
 We likewise think it clear that the lack of reference to supervised release in the written judgment was due to clerical error. Defendant contends that, far from being inadvertent, this change reflected a purposeful decision on the court's part-i.e., that the court decided, after reexamining the issue during the intervening seventeen days, to return to its initial inclination that supervised release was unwarranted. Yet the court provided no indication of having done any such thing. It would be unusual, to say the least, for a court to revise a sentence sua sponte, without notice or explanation. Moreover, defendant's two-pronged attempt to buttress his speculation in this regard is wide of the mark.
 
 
 5
 First, defendant notes that Judge McNaught imposed no term of supervised release when later sentencing a codefendant named Shlomo Levy. This fact, however, is of no relevance. Unlike defendant, Levy was sentenced for conspiring in 1985 to commit a drug offense, in violation of 21 U.S.C. § 846. And it has been clear since 1980 that the applicable version of § 846 did not contemplate any type of post-confinement monitoring (either supervised release or special parole). See, e.g., Bifulco v. United States, 447 U.S. 381 (1980).[4]
 
 
 6
 Second, defendant points to the muddled state of the law in September 1989 to infer that Judge McNaught likely changed his mind. He concedes that subsequent caselaw has vindicated the government's position that supervised release was mandatory.[5] See, e.g., Gozlon-Peretz v. United States, 498 U.S. 395 (1991); United States v. Morris, 977 F.2d 677, 686 (1st Cir. 1992), cert. denied, 113 S. Ct. 1588 (1993); United States v. Ocasio Figueroa, 898 F.2d 825, 827-28 (1st Cir. 1990), cert. denied, 113 S. Ct. 1001 (1993). He suggests, however, that the prevailing view at the time of sentencing was to the contrary-and that Judge McNaught likely revised the judgment to comport with that view. We agree that the various amendments to 21 U.S.C. § 841(b) were not a model of clarity. In particular, we agree that, at the time of sentencing, it was unsettled whether that aspect of the 1986 amendments requiring the imposition of supervised release was to take effect on October 27, 1986 or November 1, 1987. See, e.g., United States v. Ferryman, 897 F.2d 584, 586-88 (1st Cir.) (recounting statutory changes), cert. denied, 498 U.S. 830 (1990). Yet this circumstance avails defendant little. We explain briefly.
 
 
 7
 The indictment here charged defendant with distributing in excess of 500 grams of cocaine. If the amount involved was less than one kilogram, defendant's argument in this regard would fail entirely. Prior to the 1986 amendments, such an offense was subject to a mandatory special parole term. See 21 U.S.C. § 841(b)(1)(B) (Supp. 1985). Consequently, the choice faced by Judge McNaught would have been between special parole and supervised release-not between the latter sanction and no post-confinement monitoring at all.
 
 
 8
 Yet the evidence at trial showed, see Natanel, 938 F.2d at 312-13, and the government at sentencing argued, that one kilogram of cocaine was involved. This muddies the water slightly, for such an offense was not subject to special parole under preexisting law. Id. § 841(b)(1)(A); see, e.g., United States v. Santamaria, 788 F.2d 824, 829 (1st Cir. 1986).[6] Yet defendant's argument remains unconvincing. Contrary to his suggestion, it was not the predominant view in September 1989 that any such offense occurring in the "hiatus period" was exempt from post-confinement monitoring. Only a few circuit courts had addressed the issue by that time with specific reference to an offense that fell within the purview of former subsection (b)(1)(A) and thus was exempt from special parole. Their conclusions differed. Compare United States v. Torres, 880 F.2d 113, 114-15 (9th Cir. 1989) (per curiam) (supervised release applicable), cert. denied, 493 U.S. 1060 (1990) with United States v. Levario, 877 F.2d 1483, 1487-89 (10th Cir. 1989) (contra).[7] The lower courts in this circuit were likewise divided. Compare United States v. Chica, 707 F. Supp. 84, 85-86 (D.R.I. 1989) with Hernandez Rivera v. United States, 719 F. Supp. 65, 66 (D.P.R. 1989). This mottled milieu obviously would not have persuaded Judge McNaught to revise the judgment sub silentio. We conclude that an inadvertent omission, rather than a deliberate deletion, occurred here.
 
 II.
 
 9
 Given this conclusion, defendant's remaining arguments can be readily dispatched. It is clear that correcting the written judgment was appropriate here. Where an unambiguous oral sentence pronounced by the court conflicts with the written judgment, the former controls. See, e.g., United States v. Sasser, 974 F.2d 1544, 1561-62 (10th Cir. 1992) (collecting cases), cert. denied, 113 S. Ct. 1063 (1993). In addition, Rule 36-not former Rule 35(a), as defendant argues-provides the proper vehicle for correcting such a clerical error.[8] See, e.g., United States v. Corey, F.2d, No. 92-1223 (10th Cir. 1993) (Rule 36 correction appropriate where judgment should have imposed three, rather than five, years of supervised release); United States v. Strozier, 940 F.2d 985, 987 n.2 (6th Cir. 1991) (same where judgment omitted term of supervised release).
 
 
 10
 It was also unnecessary that defendant be physically present at the time the judgment was corrected. See, e.g., Corey, supra, slip op. at 5 ("court may correct the error ... sua sponte"); see also United States v. De Los Santos-Himitola, 924 F.2d 380, 382-83 (1st Cir. 1991) (defendant's presence not required where sentence amended under former Rule 35(a) to conform to originally imposed sentence). In fact, the language of Rule 36 leaves it to the court's discretion whether even to provide notice to the parties that a clerical error is being corrected. Although having a defendant present when a judgment is corrected has been described as the "better practice," 3A C. Wright, Federal Practice and Procedure: Criminal 2d § 722, at 16 (1982 & '93 Supp.), our analysis in De Los Santos-Himitola confirms it is not a compulsory practice. Since the corrective order here did not enhance defendant's sentence but simply revised the judgment to reflect the sentence as originally imposed, defendant's presence was unnecessary.[9]
 
 
 11
 Nor is relief precluded by the fact that the motion was filed over three years after entry of judgment (and some four months, according to defendant, before his scheduled release from prison). Rule 36 permits the correction of a clerical error "at any time." While the government has not explained its failure to act earlier, courts have granted Rule 36 relief after even lengthier delays. See, e.g., United States v. Marquez, 506 F.2d 620, 621 (2d Cir. 1974) (five years). Defendant contends that relief should nonetheless be barred because the government purposefully delayed acting until after Judge McNaught's retirement. In support, he argues that our opinion on direct appeal alerted the government to the fact that the judgment contained no mention of supervised release.
 
 
 12
 To the contrary, we there made no reference to the issue.[10] And no other evidence of deliberate delay has been adduced.
 
 
 13
 Finally, defendant argues in a similar vein that correction of the judgment at this late date so trenches on his settled expectations as to violate due process. Reliance is placed on Breest v. Helgemoe, 579 F.2d 95 (1st Cir.), cert. denied, 439 U.S. 933 (1978), in which we noted that the power of a court to correct a sentence to comport with statutory requirements might be subject to some temporal limit.[11] Yet it cannot be said that defendant here had any reasonable expectation that he was exempt from supervised release. The fact that Judge McNaught unambiguously imposed such sanction, the fact that our Ocasio Figueroa decision six months later confirmed the propriety of doing so, and the fact that such a sanction is statutorily mandated all militate against such a conclusion. Moreover, the corrected judgment here did not postpone defendant's release date, but simply confirmed the fact that he would be subject to supervision following his release. The Breest dicta is therefore inapposite.
 
 
 14
 Affirmed.
 
 
 
 [1]
 Our reference there to the conviction having occurred in 1990, see 938 F.2d at 308-09, is in error
 
 
 [2]
 We note that defendant's attorney did recognize that a period of supervised release would be "appropriate." Sent. Tr. at 6
 
 
 [3]
 Judge McNaught orally pronounced sentence as follows:
 Efriam Natanel, as to Count 18 of the indictment ..., the court hereby orders that you be imprisoned for a period of six years, plus a four-year period of supervised release upon your release from incarceration. The court further imposes a fine in the amount of $20,000 plus a special assessment of $50.
 Sent. Tr. at 20.
 
 
 [4]
 In an amendment not affecting Levy's case, Congress revised § 846 in November 1988 to permit the imposition of supervised release
 
 
 [5]
 Although the propriety of supervised release is thus not in dispute, the question of whether Judge McNaught intended to impose such a sanction remains relevant to the various procedural arguments advanced by defendant-such as whether the government properly proceeded by way of Rule 36
 
 
 [6]
 We are puzzled by the government's concession, see Brief at 6 n.5, that the supervised release period here could have been invalidated between the time of our Ferryman decision in February 1990 and the Supreme Court's decision in Gozlon-Peretz one year later. In Ferryman, where we held that special parole remained applicable to the "hiatus period" offenses, we expressly withheld any view as to those offenses subject to former (b)(1)(A). See 897 F.2d at 589 n.4. One month later, we ruled that such offenses in fact were subject to supervised release. See Ocasio Figueroa, 898 F.2d at 827-28
 
 
 [7]
 As noted in United States v. Gozlon-Peretz, 894 F.2d 1402, 1404-05 (3d Cir. 1990), aff'd, 498 U.S. 395 (1991), a number of other cases that found supervised release inapplicable involved offenses apparently within former subsections (b)(1)(B) & (C), such that special parole remained available
 
 
 [8]
 Rule 36 reads: "Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court enters."
 
 
 [9]
 United States v. Cook, 890 F.2d 672, 675 (4th Cir. 1989), upon which defendant relies, did not involve a clerical error subject to correction under Rule 36 and is thus inapposite
 
 
 [10]
 Defendant apparently deems significant our statement that he "was subsequently sentenced to six years in prison and fined $20,000." 938 F.2d at 306. Yet his appeal involved no challenge to any aspect of his sentence. The fact that we did not mention his supervised release term (or his $50 special assessment) is thus understandable
 
 
 [11]
 We stated:
 After a substantial period of time, ... it might be fundamentally unfair, and thus violative of due process, for a court to alter even an illegal sentence in a way which frustrates a prisoner's expectations by postponing his parole eligibility or release date far beyond that originally set.
 579 F.2d at 101.