UNITED STATES of America

v.

Edward G. PETERS, Defendant.

No. CR–98–22–B–W.

United States District Court, D. Maine.

June 2, 2004.

Timothy M. Harrington, Shaheen & Gordon, Concord, NH, for Edward G Peters (1), Defendants.

James L. McCarthy, Office of the U.S. Attorney, District of Maine, Bangor, ME, for USA, Plaintiff.

**ORDER DENYING DEFENDANT'S RULE 36 MOTION TO CORRECT**

## CLERICAL ERROR [1]

WOODCOCK, District Judge.

On February 23, 1999, the late Judge Morton A. Brody of this Court sentenced Defendant Edward G. Peters to 98 months in prison. On October 17, 2003, Mr. Peters moved to clarify and/or amend sentence in accordance with U.S.S.G. § 5G1.3(b), which he contends requires his federal sentence to run concurrently with state sentences he is serving in New Hampshire State Prison. The Government objects. This Court denies the Defendant's Motion on the ground that he has failed to demonstrate any error within the limited purview of Federal Rule of Civil Procedure 36.

## I. Statement of Facts.

Edward F. Peters is no stranger to the criminal justice system. His most recent criminal history is relevant to this Court's decision.[2] For purposes of this opinion, the story begins on August 16, 1995, when he was sentenced to 12 months in prison and 5 years probation by the New Hampshire Superior Court for an August 8, 1994, attempted burglary. Mr. Peters was released from prison in April, 1996 and began serving the 5 year term of probation.

In the fall of 1997 and the early winter of 1998, Mr. Peters decided to go on something of a crime spree.[3] On October 14, 1997, Mr. Peters committed a burglary. On November 16, 1997, November 17, 1997, and November 18, 1997, Mr. Peters committed a forgery, a criminal trespass, and two more forgeries in quick succession. After committing these crimes in New Hampshire, Mr. Peters came to Maine. On December 15, 1997, the Holiday Inn in Waterville reported a guest had used a stolen credit card to rent a room and had fled when the hotel realized the card had been stolen. The Waterville Police searched his hotel room pursuant to a search warrant and found a loaded .45 caliber Ruger handgun. It later turned out that Mr. Peters had stolen the handgun during another burglary and had stolen the credit card during yet another burglary. While the Maine incidents were under investigation, Mr. Peters returned to New Hampshire and promptly committed two more crimes. On February 1, 1998, he committed a theft of services and on February 10, 1998, a theft by unauthorized taking.

The wheels of justice began to grind. Mr. Peters pleaded guilty to the February, 1998, thefts on February 13, 1998, and received a 6 month jail term by the Plym-

---

1. The original motion was captioned "Defendant's Federal Rule of Criminal Procedure Rule 36 Motion To Clarify And/Or Amend Sentence In Accordance With U.S.S.G. § 5F1.3(b)." After the Government objected to the motion in part because a Rule 36 motion is restricted to "clerical error in a judgment, order, or other part of the record, or ... an error in the record arising from oversight or omission," the Defendant stated in footnote 4 of his Reply Memorandum that "it may have been technically more accurate to entitle his motion 'Rule 36 Motion to Correct Clerical Error.'" Defendant is correct and this Court will treat Defendant's footnote as a motion to change caption and grant it.

2. Mr. Peters criminal history stretches back to July 14, 1986, when he was first arrested for theft by unauthorized taking for which he was sentenced to a suspended prison term of seven days. He was also convicted of a number of instances of forgery in 1987. However, these earlier convictions are not relevant to the issues presented by his motion.

3. To be precise, it is more accurate to say that his crime spree began in the spring of 1997. Mr. Peters had been arrested on June 25, 1997 on four burglary charges all taking place in Rochester, New Hampshire, had been arrested on September 19, 1997 on a forgery charge, and had been re-arrested on September 29, 1997 on yet another forgery charge.

outh New Hampshire District Court.[4] On November 6, 1997, the state of New Hampshire filed a petition to revoke his probation on the ground that he had not been living at his last known address and had failed to report. Mr. Peters had initially been bailed on the revocation, but once he pleaded guilty to the thefts, his bail was revoked on February 23, 1998.

Things came to a head in the spring of 1998. On April 16, 1998, he was sentenced for violating probation to 2½ to 5 years in prison. On May 27, 1998, Mr. Peters was indicted by a Strafford County New Hampshire Grand Jury for theft of a handgun, being a felon in possession of a firearm, and two counts of burglary. On June 9, 1998, Mr. Peters was indicted by a federal grand jury in Maine on eight separate counts. On June 23, 1998, he was sentenced in New Hampshire Superior Court for the October 17, 1997 burglary to 2½ to 5 years in New Hampshire State Prison. This term was concurrent with the term imposed on the revocation of probation from the 1994 attempted burglary.

When it sentenced him on June 23, 1998 for the October, 1997 burglary, the New Hampshire Superior Court also sentenced him to a variety of prison terms for the remaining state crimes. He received 2½ to 5 years on the three November, 1997 forgeries, the prison terms for which ran consecutive to the prison term on the October, 1997 burglary. He also received 6 months on the November, 1997 criminal trespass, the term of which ran concurrently with the state prison term on the October, 1997 burglary.

Following the federal indictment on June 9, 1998, United States Magistrate Judge Beaulieu issued an Application for Writ of Habeas Corpus on July 9, 1998, ordering the United States Marshal to produce Mr. Peters from New Hampshire State Prison for federal arraignment on August 10, 1998. The arraignment was actually held on August 20, 1998 and after Mr. Peters entered a not guilty plea, Judge Beaulieu ordered Mr. Peters detained pending trial. Mr. Peters changed his plea to guilty on October 8, 1998 and the matter was set forward for the imposition of sentence.

When he appeared before Judge Brody on February 23, 1999 for imposition of sentence on the federal charges, Mr. Peters' status was as follows:

1) His 5 year probation had been revoked on the 1994 attempted burglary and he was serving a 2½ to 5 year term on the revocation;

2) He had completed the six month sentences imposed by the Plymouth New Hampshire District Court for the February, 1998 thefts of services;

3) He was serving 2½ to 5 years on the October, 1997 burglary, a sentence running concurrently with the probation revocation;

4) He had not yet begun to serve the 2½ to 5 years consecutive sentence on the November, 1997 forgeries; and,

5) He had completed the 6 month prison term on the November, 1997 criminal trespass.

As if this were not enough, Mr. Peters had a host of additional charges pending in New Hampshire Superior Court at the time of his February 23, 1999 federal sentencing. There were arrest warrants outstanding in New Hampshire for four burglary charges all taking place in Roch-

4. Technically, it was his February 1 and 10, 1998 crimes as well as the fact he had numerous criminal charges pending that caused his probation to be revoked on the 1994 attempted burglary.

ester, New Hampshire, for two additional forgery charges, and a theft of firearm and felon in possession of a firearm charges.[5]

On February 23, 1999, Mr. Peters came for sentencing before Judge Brody, having pleaded guilty to four counts: (1) a felon in possession of firearm; (2) an interstate transportation of stolen firearm; and, (3) two counts of use of a stolen credit card.[6] The Judgment In A Criminal Case signed by Judge Brody states as follows:

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 98 months on Counts One, Three, Five and Seven, to be served concurrently.

The following additional statement appears in bold in the sentencing judgment: **"The Court intends that the Defendant receive credit for any time he or she has spent in presentence detention."**

After the imposition of the federal sentence, Mr. Peters returned to New Hampshire State Prison to serve the remainder of his state sentence and to be sentenced on the remaining state criminal charges. On February 28, 2000, Mr. Peters was sentenced by the state of New Hampshire Superior Court to eight concurrent sentences of not less than 2½ years or more than 5 years on the following pending state charges:

(1) Forgery, No. 98–S–138–F;

(2) Forgery, No. 98–S 139–F;

(3) Theft of a Handgun, No. 98–S–389–F;

(4) Felon In Possession of a Firearm, No. 98–S–390–F;

(5) Burglary, No. 98–S–391–F;

(6) Burglary, No. 98–S–392–F:

(7) Burglary, No. 98–S–393–F; and,

(8) Burglary, No. 98–S–394–F.

On October 21, 2000, Mr. Peters was paroled by the state of New Hampshire and transferred to the custody of federal officials to commence his federal prison term. The United States Bureau of Prisons computer records indicate that it calculated Mr. Peters' period of incarceration to commence on October 21, 2000 with a projected release date of December 2, 2007. The computer printout indicates that the Bureau of Prisons has not applied any credit for time served to Mr. Peters' federal sentence.

## II. Discussion.

On October 17, 2003, the Defendant moved this Court to issue an Order clarifying that Mr. Peters' federal sentence should run concurrently with his entire New Hampshire state criminal sentence. Mr. Peters contends Judge Brody took into account the New Hampshire state charges when he sentenced him and, therefore, U.S.S.G. § 5G1.3 requires the federal and state sentences to run concurrently. Noting that he had entered pretrial confinement on March 16, 1998 for the New Hampshire crimes for which he

---

5. The theft of a firearm and felon in possession of a firearm were New Hampshire state charges arising from one of the Rochester New Hampshire burglaries. The federal Pre-Sentence Investigation Report indicates that the gun from that burglary was found in the Waterville, Maine hotel room; it was this gun that formed the basis of the federal gun charges. The report further stated that the credit card found in the Waterville hotel room came from one of the other Rochester, New Hampshire burglaries. The report goes on to

describe a third Rochester, New Hampshire burglary. It was alleged to have involved the burglarizing of Mr. Peters' girlfriend's apartment. The criminal complaint alleged that he stole and later pawned her diamond engagement ring and a diamond and ruby ring.

6. Counts 2, 4, 6 and 8 of the eight count Indictment were dismissed upon motion of the Government.

was sentenced on February 28, 2000, Mr. Peters argues that this Court should correct its sentencing judgment, specifying his federal sentence began March 16, 1998.

## A. Procedural Status.[7]

### 1. Calculation of Credit for Time Served: 18 U.S.C. § 3585(b).

▆▆ Title 18 U.S.C. § 3585(b)[8] controls the calculation of credit for time served in official detention prior to the date the sentence commences. The United States Supreme Court has ruled that the Attorney General, not the sentencing court, is responsible for this calculation. *United States v. Wilson,* 503 U.S. 329, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992); *see also United States v. Martin,* 363 F.3d 25, 39 (1st Cir.2004) (noting Attorney General is responsible for calculating amount of credit granted to defendants). In *Rogers v. United States,* 180 F.3d 349, 357–58 (1st Cir.1999), the First Circuit made it clear that a request for credit for prior custody under 18 U.S.C. § 3585(b)(2) must be made, in the first instance, to the Attorney General through the Bureau of Prisons upon imprisonment after sentencing. Once administrative remedies are exhausted, prisoners may then seek judicial review of any jail-time credit determination by filing a *habeas* petition under 28 U.S.C. § 2241. *Id.*

Mr. Peters makes no assertion that he attempted to exhaust his administrative remedies, as required by *Rogers,* nor does the instant action purport to be a *habeas* petition. Following the Government's response, Mr. Peters agreed 18 U.S.C. § 3585(b) would be inapplicable to his current claim; he is proceeding instead under 18 U.S.C. § 3584(b).[9]

### 2. Rule 36 Standard.

▆▆ In his Reply, Mr. Peters confirmed his motion is filed pursuant to Rule 36 of the Federal Rules of Criminal Procedure.[10] Rule 36 states:

> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

---

7. Mr. Peters did not directly appeal Judge Brody's sentencing judgment. Moreover, Mr. Peters has not attempted to invoke the provisions of 28 U.S.C. § 2255, which provides in part that "a prisoner in custody ... claiming the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." *Id.*

8. 18 U.S.C. § 3583 states as follows:
   (a) Commencement of sentence-A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
   (b) Credit for prior custody-A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
   (1) as a result of the offense for which the sentence was imposed; or

9. The following sentence appears in the Defendant's reply: "The Government incorrectly argues that Mr. Peters was required to exhaust his administrative remedies, apparently based upon a mistaken assumption that Mr. Peters is proceeding pursuant to 18 U.S.C. § 3583(b), as opposed to § 3584(a)." *Def.'s Reply Brief* at 9.

10. Even though his initial memorandum was captioned as a Rule 36 Motion, the Government noted that if the motion was being filed under Rule 35, the seven day time limit from sentencing had long since expired. F.R.Crim.P. 35 (*"Within 7 days after sentencing,* the court may correct a sentence that resulted from arithmetical, technical, or other clear error."); *United States v. Fahm,* 13 F.3d at 453–54 (1st Cir.1994). In his reply, Mr.

After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission.

The First Circuit has stated a Rule 36 motion "is considered generally inapplicable to judicial errors and omission." *United States v. Fahm*, 13 F.3d 447, 454, n. 8 (1st Cir.1994). In its footnote, the *Fahm* Court cited *United States v. Daddino*, 5 F.3d 262, 264–65 (7th Cir.1993), which contains a more extensive explanation of the rationale behind the restriction in Rule 36 to clerical errors and its inapplicability to errors made by the court itself. *See also* C.A. Wright, Federal Practice and Procedure § 611 (2d ed. Supp.1993) ("an error arising from oversight or omission by the court, rather than through a clerical mistake, is not within the purview of [Rule 36]"). The Advisory Committee Note to Rule 36 confirms only that it continues "the existing law." The Committee cites *Rupinski v. United States*, 4 F.2d 17 (6th Cir.1925). The *Rupinski* Court addressed a clerical error in which the clerk's blotter had dismissed count 2, not as was ordered count 3. The Court stated: "While the general rule is that the records and decrees of the court cannot be altered after the term, there is a well-recognized exception in the case of *mere clerical errors.*" *Id.* at 17 (emphasis supplied).

In his Reply, Mr. Peters points to cases where Rule 36 motions have been granted. In *United States v. Crecelius*, 751 F.Supp. 1035 (D.R.I.1990), Judge Torres granted a Rule 36 motion, increasing a sentence from 12 months to 12 months and 1 day in order to allow the defendant to receive good time credits. Judge Torres reasoned he had intended to order the minimum sentence under the guideline range and by adding one day, the sentence was actually less. *Id.* at 1036. ("an apt illustration of when more may be less"). Judge Torres, however, decided *Crecelius* before the First Circuit footnoted its view of Rule 36 in *Fahm. Id.* at 1037 ("The First Circuit has not yet had occasion to consider whether a divergence between the sentence a court intended to impose and that which it actually imposed constitutes a 'clerical error' within the contemplation of Rule 36"). Moreover, Judge Torres was the sentencing judge in *Crecelius* and knew what he had intended had not been accomplished.

■ The remaining cases cited by Mr. Peters stand only for the proposition that "where an unambiguous oral sentence pronounced by the court conflicts with the written judgment, the former controls." *United States v. Natanel*, 1993 WL 372862, *4, 1993 U.S.App. LEXIS 24624 * 10; *United States v. Mojabi*, 161 F.Supp.2d 33, 37 (D.Mass.2001). In each case the sentencing judge made a specific statement at the time of sentencing that was either not contained in or was contradicted by the judgment. In *United States v. McAfee*, 832 F.2d 944 (5th Cir.1987), the district judge stated during sentencing that he would "not run a concurrent sentence" for the crime of escape. *Id.* at 945 n. 1. However, the sentencing judgment failed to mention whether the sentence was consecutive or concurrent and the district judge *sua sponte* corrected the judgment under Rule 36 one month after entering the sentence. The Fifth Circuit ruled that since the record "clearly discloses the unequivocal intent of the sentencing judge to impose a consecutive sentence," the trial judge could use Rule 36 to clarify his intention to impose consecutive sentences without violating the double jeopardy

Peters reiterated he is proceeding under Rule 36 only. See fn 1 above.

clause of the Fifth Amendment. *Id.* at 946.

Similarly, in *United States v. Niemiec*, 689 F.2d 688 (7th Cir.1982), the Seventh Circuit concluded that Rule 36 was available to correct "an order of commitment so that the order more clearly reflects the judge's intent..." *Id.* (quoting *Fitzgerald v. United States*, 296 F.2d 37 (5th Cir. 1961) ("It is clear that the court by the amendment merely rendered its original intention beyond dispute. The law does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner."))

Guided by the language of Rule 36, the footnote in *Fahm*, and other caselaw, this Court reviews the record to determine whether a clerical error, oversight or omission, as opposed to an error of law, is contained in the sentencing judgment in this case. Because Rule 36 is limited to the correction of clerical errors, this Court's analysis is similarly circumscribed. The Rule 36 standard is a daunting one for Mr. Peters. *Natanel*, 1993 WL 372862, *4, 1993 U.S.App. LEXIS 24624 at * 10 ("unambiguous oral sentence pronounced by the court conflicts with the written judgment"); *Crecelius*, 751 F.Supp. at 1037 ("a failure to accurately reflect the clearly expressed intent of the sentencing Court"); *United States v. Villano*, 816 F.2d 1448, 1450 (10th Cir.1987) (*en banc*) ("an orally pronounced sentence controls over a judgment and commitment order when the two conflict."); *United States v. Sasser*, 974 F.2d 1544, 1562 (10th Cir.1992), *cert. denied*, 506 U.S. 1085, 113 S.Ct. 1063, 122

L.Ed.2d 368 (1993); *McAfee*, 832 F.2d at 946 ("The terms of an oral pronouncement that clearly provide for a consecutive or concurrent sentence control a contrary, silent or ambiguous written judgment."); *Johnson v. Mabry*, 602 F.2d 167, 170 (8th Cir.1979) ("the oral sentence pronounced by the sentencing judge constitutes the judgment, and anything inconsistent with the judgment which is included in a commitment order is a nullity.").

## B. Rule 36 Analysis.

■ On this record, there is simply no evidence of a clerical error in the Sentencing Judgment. Mr. Peters has not provided the Court with a transcript of the February 23, 1999 sentencing hearing and there is no basis for this Court to conclude that Judge Brody's oral sentence was inaccurately transposed into the Sentencing Judgment.

■ Mr. Peters' claim is based on a different argument. He contends the mandate of U.S.S.G. § 5G1.3(b) is so clear, Judge Brody's Sentencing Judgment "can have only one meaning: that the Court intended ... Mr. Peters' Federal sentence to run concurrent with the full length of any related state sentence pursuant to U.S.S.G. § 5G1.3(b)." [11] *Def.'s Reply Brief* at 4. The short and unanswerable response is if the Sentencing Judgment is so crystal clear, no clerical error need be corrected. Defendant's argument must, therefore, be with others who he contends are misinterpreting the Court's clearly expressed intent.[12] This is not a Rule 36 issue.[13]

---

**11.** Defendant Peters reiterates this point in his Reply Brief: "The only logical meaning of the language, including the word, 'any,' is that the Court was referring to the period that Mr. Peters had spent in state custody beginning March 16, 1998, including the period of time during which he was borrowed by the federal government via a writ of *habeas corpus ad prosequendum.*" *Def.'s Reply Brief* at 6.

**12.** In Defendant's Reply Brief, Mr. Peters argues that the "Bureau of Prisons ('BOP') is proceeding on the mistaken assumption that his current sentence began on the date he was released by New Hampshire officials into the

## III. Conclusion.

Accordingly, the Defendant's Motion to Correct Clerical Error is DENIED.

SO ORDERED.

custody of federal officials." *Def.'s Reply Brief* at 8.

**13.** In so ruling, this Court is not implying any position on the correctness of Mr. Peters' underlying substantive argument: that his federal and state sentences should run con-

currently. This Court's analysis is limited to clerical error, not errors of law or interpretation. Mr. Peters cannot present the latter issues to this Court under the guise of a Rule 36 motion.