UNITED STATES, Plaintiff, Appellee,

v.

William STUBBERT, Defendant, Appellant.

No. 80–1625.

United States Court of Appeals, First Circuit.

Argued May 4, 1981.

Decided Aug. 4, 1981.

David M. Lipman, Augusta, Me., by appointment of the Court, argued, with whom Lipman, Parks, Livingston, Lipman & Katz, P. A., of Augusta, Me., were on brief, for defendant-appellant.

Margaret D. McGaughey, Asst. U. S. Atty., with whom Thomas E. Delahanty, II, U. S. Atty., Portland, Me., was on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, GIBSON, Senior Circuit Judge,* and CAMPBELL, Circuit Judge.

GIBSON, Senior Circuit Judge.

William Stubbert was convicted by a jury in the United States District Court for the District of Maine of conspiracy to possess with intent to distribute 2.2 pounds of cocaine in violation of 21 U.S.C. § 846 (1976).

* Of the Eighth Circuit, sitting by designation.

Following the February 1980 trial, the district court, on January 19, 1981, sentenced Stubbert to twenty-seven months' imprisonment. On appeal, Stubbert contends that the district court erred in failing to grant his motion for judgment of acquittal on the basis of insufficiency of the evidence to prove the charges of the indictment, and a variance in the proof. Stubbert also challenges the trial court's refusal to strike the testimony of a co-conspirator who refused to answer certain questions relating to the identity of other purchasers of the cocaine. We affirm the district court.

*Facts*

In January 1979, Erwin Chadwick and Jane Stevens, of Waterville, Maine, traveled to Miami, Florida, and purchased, on credit, one kilogram (2.2 pounds) of fifty percent pure cocaine from Terry Purcell for $46,000. Purcell "fronted", or sold on credit, the cocaine to Chadwick. In other words, Purcell would later travel to Maine to collect the amount owing after Chadwick had had an opportunity to resell it.

On February 14, 1979, Chadwick returned to Waterville and began setting up his distribution network. Chadwick and Stevens rented a room in the local Holiday Inn. Later that evening, Chadwick met with an old friend, Laurie McCann, and asked McCann to help find buyers for the cocaine. McCann mentioned Stubbert as a possible customer.

McCann then proceeded to make contact with Stubbert at his home. After sampling the cocaine, Stubbert stated that he would try to sell some of the cocaine. McCann told Stubbert that he would stop by later. The next day McCann returned and Stubbert informed him that he could sell an ounce for $1,750, which was somewhat below the street price of $2,000 to $2,600. Later that afternoon McCann, after obtaining the cocaine from Chadwick at the Holiday Inn, delivered it to Stubbert. At that time McCann told Stubbert that he would stop by later to see if he was interested in further purchases. The following day

McCann returned and Stubbert placed an order for two ounces of the cocaine at $1,750 per ounce. Later that evening, Stubbert traveled to McCann's apartment and exchanged $3,500 in cash for the cocaine. In the preparation of the cocaine for sale, a gram was deleted from each ounce and a gram of mannitol substituted, a not unusual procedure. The deleted gram of cocaine was given to McCann for his efforts in aiding the sale.

A third sale of cocaine followed the next day. Once again, McCann visited Stubbert at his home and asked how the sales were going. McCann testified that Stubbert replied that "some people had been complaining a little bit about it, but other than that, it was okay." Then Stubbert placed an order for half an ounce. McCann went to the Holiday Inn and obtained the cocaine from Chadwick and then proceeded to make the delivery at Stubbert's home. This time McCann "fronted" the cocaine to Stubbert for $900. Later that evening McCann returned in an attempt to obtain the cash. Stubbert apparently paid McCann $400 of the amount owing and then McCann agreed to front Stubbert for another quarter-ounce. A couple of days later, McCann made the final delivery at Stubbert's home. Stubbert paid McCann $350 of the $450 purchase price. Stubbert remained indebted to McCann for $600.

In the meantime, Purcell had arrived in Waterville from Miami to collect the $46,-000 owed by Chadwick for the cocaine. Purcell also checked into a room at the Holiday Inn. On Sunday, February 25, 1979, Purcell decided to leave Waterville for Miami, even though he had collected only $40,000 of the original purchase price. On that day, a caravan of automobiles left the Holiday Inn at the same time Purcell set off for the airport. Included in the procession were, Purcell, Chadwick and Stevens in Stevens's car, McCann's car, and an Oldsmobile which had been rented to Stubbert.

Local authorities and Drug Enforcement Agency agents stopped and later arrested Purcell at the airport. Stevens and Chadwick were stopped in the car and questioned; they were later arrested. Finally, a warrant was executed for a search of Stubbert's apartment.

When the police arrived at the apartment, they found and arrested McCann and Stubbert there. They also found implements used for the consumption and distribution of cocaine, with traces of cocaine present. McCann testified that at the time the police arrived he had just finished telling Stubbert that "the gang had just been arrested" and that he had to get bail money together.

Subsequently Purcell, Chadwick, Stevens, McCann, and Stubbert were indicted and charged with conspiracy in violation of 21 U.S.C. § 846 (1976). All but Stubbert pled guilty pursuant to plea bargain arrangements. Chadwick and McCann testified against Stubbert at trial.

*Sufficiency of the evidence*

Stubbert contends that the district court erred in failing to grant a judgment of acquittal in his favor on the basis of insufficiency of the evidence. Stubbert made a motion for a judgment of acquittal prior to the time the case was submitted to the jury. The trial court reserved decision on the motion until after the jury returned its verdict. *See* Fed.R.Crim.P. 29. On March 14, 1980, the district court denied the motion.

Stubbert claims that the evidence, at most, establishes that a conspiracy existed between McCann and Stubbert for the distribution of the cocaine. Stubbert alleges that the evidence does not support a conspiracy between Stubbert and Purcell, Chadwick, and Stevens as set forth in the indictment. Basically, Stubbert asserts that there "is no evidence that Stubbert was aware of the size of either McCann's or Chadwick's operation * * * [or] knowledge by Stubbert of an ongoing cocaine sales distribution operation." Appellant's brief at 3–4. We disagree.

In reviewing a sufficiency of the evidence question, we start with the proposition that "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the

view most favorable to the Government, to support it. Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collocation of circumstances.'" *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) (citation omitted); *see United States v. Vargas*, 633 F.2d 891, 899 (1st Cir. 1980). The trial court in this case reviewed the evidence presented at trial in its ruling on the motion for acquittal. The court came to the following conclusion:

The significance of all this evidence is that it reveals a direct chain of participants—from Purcell to Chadwick to McCann to Stubbert—in a conspiracy to distribute [cocaine], as charged in the Indictment. As is apparently common in such conspiracies, at each level secrecy was maintained so that those at one level were not aware of those more than one step removed from them. Thus, the evidence suggests that Stubbert was not aware of Chadwick or Purcell, and apparently McCann was not aware of Purcell. In short, the evidence in this case disclosed a classic chain conspiracy. A chain conspiracy is distinguished from a spoke or wheel conspiracy. A spoke or wheel conspiracy is one which involves more than one participant at the same level where the participants are not aware of one another. An example of a wheel or spoke conspiracy would be a conspiracy among the individuals whom Chadwick refused to name—the retailers to whom he, Chadwick, had distributed cocaine— the retailers who were on the same level as McCann. A wheel or spoke conspiracy differs from a chain conspiracy—the type of conspiracy of which the evidence would permit the jury to find Stubbert was a member in the present case. *Compare Kotteakos v. United States*, 328 U.S. 750 [66 S.Ct. 1239, 90 L.Ed. 1557] (1946) *with United States v. Taylor*, 562 F.2d 1345, 1352–53 (2d Cir. 1977). * * * [T]he evidence in this case was sufficient to permit the jury to find beyond a reasonable doubt that Stubbert was buying cocaine from McCann with the intent to distribute it and that Stubbert was aware McCann was getting the cocaine from a source that was supplying more cocaine than Stubbert himself was buying.

■ The jury could have reasonably concluded that Stubbert was a knowing participant in the conspiracy, who was aware of its essential features and general aims. *See Blumenthal v. United States*, 332 U.S. 539, 558, 68 S.Ct. 248, 257, 92 L.Ed. 154 (1947); *United States v. Izzi*, 613 F.2d 1205, 1210 (1st Cir.), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 793 (1980); *United States v. DiGregorio*, 605 F.2d 1184, 1192 (1st Cir.), *cert. denied*, 444 U.S. 937, 944, 983, 100 S.Ct. 287, 302, 489, 62 L.Ed.2d 197, 312, 411 (1979). The Supreme Court in *Blumenthal* explicitly held that a conspirator need not be cognizant of the details of the conspiracy, including the identities of those participating in it:

Secrecy and concealment are essential features of successful conspiracy. The more completely they are achieved, the more successful the crime. Hence the law rightly gives room for allowing the conviction of those discovered upon showing sufficiently the essential nature of the plan and their connections with it, without requiring evidence of knowledge of all its details or of the participation of others. Otherwise the difficulties, not only of discovery, but of certainty in proof and of correlating proof with pleading would become unsuperable, and conspirators would go free by their very ingenuity.

*Blumenthal v. United States*, 332 U.S. at 557, 68 S.Ct. at 256 (footnote omitted).

The district court, in applying these principles to the present case, concluded that, based on the evidence, "the jury could find beyond a reasonable doubt that McCann and Stubbert were in agreement and were cooperating to distribute whatever cocaine McCann could supply and Stubbert could market, and that Stubbert was aware that McCann was tied into a larger source of supply." We agree that the evidence was

sufficient to convict Stubbert of the conspiracy charged in the indictment.[1]

*Evidentiary ruling*

Stubbert next contends that the district court erred in refusing to strike Chadwick's testimony when Chadwick, on cross-examination, refused to name the other individuals, besides McCann, to whom he sold cocaine in February 1979. Chadwick during cross-examination admitted that he sold cocaine to persons other than McCann. Stubbert then questioned Chadwick as to the identities of those individuals. After consultation with counsel, Chadwick refused to answer on the basis of his fifth amendment right against self-incrimination. The Government also argued that part of the plea bargain with Chadwick had been an unwritten agreement that he would not have to name those individuals.

The district court considered the matter and ruled that Chadwick had waived any fifth amendment right by testifying that he had sold cocaine to others. The court then ordered Chadwick to answer, informing him of the possibility of contempt if he refused. Chadwick refused and stated in open court that he believed he would be killed were he to answer. Stubbert then moved to strike all of Chadwick's testimony. The court denied the motion.

Stubbert contends that testimony by Chadwick concerning the names of the individuals he sold to was necessary to establish that Stubbert was not really part of any conspiracy but was only "a sacrificial lamb" used by Chadwick in his plea bargain. The district court understood Stubbert's position and made the following comment:

The Court has indicated previously and again emphasizes that it is far from satisfied that the actual names are relevant or material or that the refusal of the [witness] to provide the actual names in any way would prejudice the defendant and/or the theory of the defense. The Court has indicated that you may inquire as to how many were made or whether in the Waterville area, and so forth, and the [witness] apparently is prepared to answer those questions.

We believe that the district court properly instructed Chadwick to name the individuals. Furthermore, it was improper for the Government to enter into any unwritten agreement with one of the co-conspirators that would limit Stubbert's right to examine the scope of the conspiracy he was charged with being a member of. We hold, however, that the district court did not err in refusing to strike Chadwick's testimony. *See Frazier v. Cupp*, 394 U.S. 731, 736, 89 S.Ct. 1420, 1423, 22 L.Ed.2d 684 (1969) (prosecutor's good faith, or lack of it, is not controlling in determining whether a defendant has been deprived of the right of confrontation).

The Supreme Court in *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), quoted from Professor Wigmore's treatise on evidence concerning the importance of cross-examination to the right of confrontation:

"The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.* The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers." 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940). (Emphasis in original.)

Only in unusual circumstances should cross-examination be limited by the trial court. In this case, the trial court did not limit Stubbert's cross-examination. The court only refused to strike Chadwick's direct testimony when Chadwick refused to answer, even when faced with the threat of contempt. The United States Court of Appeals for the Second Circuit addressed a similar problem in *United States v. Cardillo*, 316 F.2d 606, 613 (2d Cir.), *cert. denied*, 375

[1] We also note that Stubbert twice declined the district court's invitation to give a jury instruction of a lesser conspiracy. *See United States v. Levine*, 569 F.2d 1175, 1177–78 & n.6 (1st Cir.), *cert. denied*, 436 U.S. 928, 98 S.Ct. 2824, 56 L.Ed.2d 771 (1978).

U.S. 822, 857, 84 S.Ct. 60, 120, 11 L.Ed.2d 55, 84 (1963), involving a situation where the witness refused to answer questions posed on cross-examination on the basis of his right against self-incrimination. The court laid down the following general guidelines:

> This is not to say that every refusal to answer by a witness, claiming his constitutional right against self-incrimination, requires the striking of his testimony or a part thereof. There would appear to be at least three categories to be considered. The first would be one in which the answer would have been so closely related to the commission of the crime that the entire testimony of the witness should be stricken. The second would be a situation in which the subject matter of the testimony was connected solely with one phase of the case in which event a partial striking might suffice. The third would involve all collateral matters or cumulative testimony concerning credibility which would not require a direction to strike and which could be handled (in a jury case) by the judge's charge if questions as to the weight to be ascribed to such testimony arose. As to the first and second categories suggested, whether all or a part of the testimony should be stricken, must depend upon the discretion of the trial judge exercised in the light of the particular circumstances. Unsatisfactory as such a generality is for a trial judge who is required to give instantaneous rulings on close questions and who does not enjoy the luxury of reflective appellate deliberation, any set of specific dogmas would be even more unworkable.

We agree with the Second Circuit's analysis of this problem. Chadwick's refusal to name the identities of the other individuals to whom he sold cocaine was collateral to the question before the jury of whether Stubbert engaged in a "classic chain conspiracy" with Purcell, Chadwick, and McCann. The district court, as quoted *ante*

at 457, questioned the relevancy of the exact identities. The district court also instructed the jury that they could consider Chadwick's refusal to testify in their evaluation of his testimony. Stubbert has not shown that the identities of Chadwick's buyers were connected with all or part of the crime with which Stubbert was charged.[2] Accordingly, this situation fits within the third category discussed in *Cardillo*.

The district court did not err in refusing to strike Chadwick's direct testimony. We emphasize, however, that the prosecutor should not enter into unwritten plea bargain agreements with co-defendants which may restrict another co-defendant's right to cross-examination if he chooses to go to trial.

*Affirmed.*

---

2. We also note that Stubbert argues in his brief that the identities were necessary to attack the credibility of Chadwick. The credibility of a witness who refuses to testify, however, has been held to be a collateral matter. *See United States v. Gould*, 536 F.2d 216, 222 (8th Cir. 1976).