**UNITED STATES of America,
Plaintiff,**

v.

**(5) Angel RAMALLO–DIAZ,
(6) Ramallo Bros., Inc.,
et al., Defendants.**

**No. CR. 05–244(PG).**

United States District Court,
D. Puerto Rico.

Sept. 25, 2006.

Aramis G. Rios, United States Attorney's Office, Marcos E. Lopez, United States Attorney's Office, Nereida Melendez–Rivera, United States Attorney's Office, Torre Chardon, Sonia I. Torres–Pabon, United States Attorney's Office, Torre Chardon, San Juan, PR, for USA, Plaintiff.

Luis A. Plaza–Mariota, San Juan, PHV Duncan Stevens, Miller & Chevalier, Chartered, PHV Mark Rochon, Miller & Chevalier, Chartered, Washington, DC, Ricardo R. Pesquera–Annexy, Ricardo R. Pesquera P. A., Orlando, FL, for Angel Ramallo–Diaz (5), Defendant.

Osvaldo Carlo–Linares, Lausell & Carlo, PSC, San Juan, PR, for Ramallo Bros., Inc. (6), Defendant.

Juan H. Soto–Sola, Juan H. Soto Sola Law Office, San Juan, PR, for Eurobank, Interested Party.

## OPINION & ORDER

PEREZ–GIMENEZ, District Judge.

Before the Court are defendant Ramallo–Diaz's "Motion to Dismiss Counts 2 and 14 of the Indictment for Duplicity" (Docket No. 286), "Motion to Sever Misjoined Counts" (Docket No. 287), and "Motion to Dismiss Counts 2 and 14 of the Indictment as Time–Barred" (Docket No. 316).[1] For the reasons set forth below, defendants' motion for severance is **GRANTED IN PART AND DENIED IN PART**, while both of his motions to dismiss are **DENIED**.

### I. Background

Thirteen persons including co-defendants Ramallo–Diaz and Ramallo Bros., Inc. ("the Ramallo co-defendants") were indicted by a federal grand jury for a variety of embezzlement and money laundering offenses. In final form, the indictment contained twenty-three counts, only six of which involve the Ramallo co-defendants. Count 2 alleges that these two co-defendants and four others conspired to embezzle funds from an employee welfare benefit plan or employee pension benefit plan subject to Title I of ERISA to the tune of eight million dollars ($8,000,000) from on or about 1992 to on or about April 2003. (Docket No. 2 at 13–24). Counts 12 and 13 charge the Ramallo co-defendants and three others with embezzlement and misapplication of health care program funds, and count 14 charges them, along with four others, with conspiring to launder money embezzled from the health care plan. (*Id.* at 25–29). Finally, counts 22 and 23 contain healthcare fraud and money laundering forfeiture allegations, respectively. (*Id.* at 34–42).

---

1. Co-defendant Ramallo Bros., Inc. has joined Ramallo–Diaz's motions to sever and to dismiss for duplicity (Docket No. 315), and his motion to dismiss as time-barred (Docket No. 317).

To put matters into perspective, we paraphrase the other charges contained in the indictment. Count 1 alleges that two people, not including the Ramallo co-defendants, confederated to embezzle in excess of one million nine hundred fifty thousand dollars ($1,950,000) in labor union funds from the International Longshoremen's Association Local 1740 ("UTM Local 1740") from on or about 1990 to on or about June 2005. (*Id.* at 7–13). Counts 3–7 and 8–11 charge sundry persons, not including the Ramallo co-defendants, with embezzlement of labor union funds and embezzlement and misapplication of health care program funds, respectively. Count 15 charges eight individuals sans the Ramallo co-defendants with conspiracy to launder money embezzled from union dues (*Id.* at 29–31), while counts 16–20 charge Jorge L. Aponte–Figueroa with making false records in connection with the conspiracy charged in count 1 (*Id.* at 31–33). Finally, count 21 includes labor union embezzlement forfeiture allegations against Aponte–Figueroa and Enrique Sosa–Hernandez. (*Id.* at 33–34).

## II. Dismissal

The Ramallo co-defendants have moved to dismiss counts 2 and 14 of the indictment for duplicity (Docket No. 286) and as time barred (Docket No. 316). The Court will address each ground in turn.

### A. Duplicity

██ Duplicity is the joining in a single count of two or more distinct and separate offenses. *United States v. Canas*, 595 F.2d 73, 78 (1st Cir.1979). The vice of duplicity "is that there is no way in which the jury can convict on one offense and acquit on another offense contained in the same count." Wright, Federal Practice and Procedure: Criminal 3d § 142 at 16. While a duplicity problem is not fatal to an indictment, Courts should observe the prohibition against such a pleading practice as it seeks to preserve a defendant's rights "to notice of the charges against him, to a unanimous verdict, to appropriate sentencing and to protection against double jeopardy in a subsequent prosecution." *United States v. Crisci*, 273 F.3d 235, 238 (2d Cir.2001) (citing *United States v. Murray*, 618 F.2d 892, 896 (2d Cir.1980)).

Ramallo co-defendants contend that counts 2 and 14 are defective for duplicity, inasmuch as they allege two distinct conspiracies within each count. In essence, co-defendants press that "[t]he bulk of both counts is given over to an alleged scheme involving [co-defendants] Mr. Aponte, Mrs. Perez, Ms. Pagan, and Mr. Garcia… [, which] was independent of any acts by Mr. Ramallo and Ramallo Bros." (Docket No. 286 at 2). As construed by the Ramallo co-defendants, counts 2 and 14 each charge two conspiracies: one between Aponte–Figueroa, Perez–Alfonso, Pagan–Morales, and Garcia–Perez, and the other between Ramallo–Diaz, Ramallo Bros., and Pagan–Morales. That they are "separate conspiracies," they add, is evidenced by the fact that they "took place on vastly different scales, over different time frames, using different techniques…with two largely independent sets of participants, to achieve wholly distinct goals for the benefit of unrelated individuals." (Docket No. 286 at 6–7).

██ By definition, a count is duplicitous only if it includes "two or more *distinct and separate offenses.*" *Canas*, 595 F.2d at 78 (emphasis added). One formulation of what constitutes separate offenses is that which looks to whether each requires proof of an additional fact that the other does not. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1931). While the First Circuit has not been extensive in its analysis of

duplicity arguments in the context of conspiracy charges, other circuits have looked at "whether there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy." *United States v. Gordon*, 844 F.2d 1397, 1401 (9 th Cir.1988) (internal citations omitted). In our analysis, however, we must not lose sight of the trite but true maxim that "a conspirator need not be cognizant of the details of the conspiracy, including the identities of those participating in it." *United States v. Stubbert*, 655 F.2d 453, 456 (1st Cir.1981); *see also Blumenthal v. United States*, 332 U.S. 539, 557, 68 S.Ct. 248, 92 L.Ed. 154 (1947). To hold otherwise would make insuperable the difficulties of discovery and proof in conspiracy cases, allowing conspirators to "go free by their very ingenuity." *Blumenthal*, 332 U.S. at 557, 68 S.Ct. 248.[2] Additionally, it is well settled that "a single agreement to commit an offense does not become several conspiracies because it continues over a period of time." *Braverman v. United States*, 317 U.S. 49, 52, 63 S.Ct. 99, 87 L.Ed. 23 (1942). To borrow Justice Holmes' rhythmic words:

> [W]hen the plot contemplates bringing to pass a continuous result that will not continue without the continuous co-operation of the conspirators to keep it up, and there is such continuous co-operation, it is a perversion of natural thought and of natural language to call such continuous co-operation a cinematographic series of distinct conspiracies, rather than to call it a single one.

*United States v. Kissel*, 218 U.S. 601, 607, 31 S.Ct. 124, 54 L.Ed. 1168 (1910).

Seen through the jurisprudential prism outlined above, the Ramallo co-defendants' arguments stray off the mark. Co-defendants' argumentative prowess notwithstanding, the Court is convinced that, read as a whole, Counts 2 and 14 do not allege the commission of distinct and separate offenses but of one ongoing criminal conspiracy each. Counts 2 and 14 outline ongoing conspiracies to embezzle and launder money from the UTM Local 1740 Health Plan Account to benefit two sets of individuals: first, Ramallo–Diaz, Ramallo Bros., and Garcia–Perez as the recipients of kick-backs for cashing the checks made to their names for services not rendered or in excess of services legitimately rendered, and second Pagan–Morales, Aponte–Figueroa, and Perez–Alfonso, as the ultimate beneficiaries of the net embezzled funds. These two sets of individuals employed the same embezzlement techniques to achieve their goals: co-defendants who were officers of the UTM Local 1740 Health Plan would issue checks to Ramallo, Bros. and Mr. Garcia–Perez's shell companies for services not rendered or in amounts exceeding services legitimately rendered for the Health Plan, Ramallo–Diaz, Ramallo Bros., and Garcia–Perez would deposit and/or cash the checks, they would charge a kick-back of approximately 10–30%, and they would ultimately funnel the net proceeds back to the Health Plan directors through Pagan–Morales. This identity of *dramatis personae* and embezzlement techniques within (and even across) counts 2 and 14 point the Court's compass away from a finding of duplicity.

That Ramallo–Diaz's and Ramallo, Bros.' participation in the conspiracies "took place on vastly different scales [and] over different time frames..." (Docket No. 286 at 6–7) than the participation of

**2.** Thus, one common type of conspiratorial arrangement is the aptly called "spoke or wheel conspiracy", "which involves more than one participant at the same level where the participants are not aware of one another." *Stubbert*, 655 F.2d at 456.

other co-defendants is of no moment. As intimated above, a conspirator need not be aware of every detail of the conspiracy he participates in, including the identities of his co-conspirators, *Stubbert*, 655 F.2d at 456, and a single agreement to commit an offense does not become several conspiracies because it continues over a period of time. *Braverman*, 317 U.S. at 52, 63 S.Ct. 99. To hold in this case that Ramallo–Diaz's and Ramallo, Bros.'s participation in the embezzlement and laundering conspiracies constitute a separate and distinct offense from the participation of the other co-defendants in the same schemes would turn these axiomatic rules on their proverbial heads.

From the preceding discussion, it is plain that neither count 2 nor count 14 of the indictment charge "two or more distinct and separate offenses." *Canas*, 595 F.2d at 78. Thus, co-defendants' motion to dismiss them for duplicity (Docket No. 286) must be **DENIED**.

### B. *Statute of Limitations*

█ In cases charging a conspiracy in violation of a statute that requires proof of an overt act, the applicable statute of limitations is complied with if "[1] the conspiracy still subsisted within the [five years] prior to the return of the indictment, and [2] . . . at least one overt act in furtherance of the conspiratorial agreement was performed within that period." *Grunewald v. United States*, 353 U.S. 391, 396–7, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). The grand jury returned the above captioned indictment on July 19, 2005. It must thus be clear from the indictment that the conspiracy was still ongoing and that at least one of the alleged overt acts in furtherance of the conspiracy was performed on or after July 19, 2000.

As alleged, Counts 2 and 14 of the indictment fall within the applicable statute of limitations, as they comport with *Grunewald's* two-prong test. *Id.* Count 2 charges a conspiracy to embezzle ERISA funds and Count 14 a conspiracy to launder money embezzled from the health plan. Both conspiracies are alleged to have commenced on or about 1992, and to have continued through on or about April 2003. (Docket No. 2 at 13, 26). Additionally, the indictment alleges, *inter alia,* the following overt acts in furtherance of the conspiracies: [3]

— Count 2, Overt Act 2: "During the months of July, November, and December 2000, defendant [6] Ramallo Bros. Inc., received for (4) checks from the Health Plan totaling thirty thousand four hundred and forty nine dollars ($30,449.00) for services not rendered." (Docket No. 2 at 17).

— Count 2, Overt Act 3: "After receiving and depositing the checks from the Health Plan Account into defendant [6] Ramallo Bros., Inc.'s Firstbank account, defendant [5] Angel Ramallo–Diaz caused five checks to be issued from the Firstbank account payable to 'payroll cash.' The checks were cashed by defendant [6] Ramallo Bros., Inc.'s employees and the cash delivered to defendant [4] Milagros Pagan–Morales . . ." (Docket No. 2 at 17–18).

It is plain, then, that Counts 2 and 14 of the indictment allege conspiracies that were ongoing within the five year limitations period, and that at least one overt act in furtherance of the conspiracies is alleged to have been performed within that period. Consequently, co-defendants' motion to dismiss counts 2 and 14 as time-barred (Docket No. 316) must be **DENIED**.

---

**3.** Though both cited overt acts are alleged in connection with Count 2, they are re-alleged and incorporated by reference into Count 14. (Docket No. 2 at 29).

### III. Joinder and Severance

The Ramallo co-defendants argue that counts 2 and 14 were improvidently joined with the rest of the indictment and should be severed. The appearing co-defendants also contend that counts 2 and 14 each charge two conspiracies (for a total of four separate conspiracies), which were also misjoined and must be severed. Their importunements implicate Rules 8(b) and 14 of the Federal Rules of Criminal Procedure, which the Court will address sequentially.

#### A. Joinder

 In cases involving multiple defendants, Rule 8(b) governs joinder of defendants and offenses.[4] *United States v. Natanel*, 938 F.2d 302, 306 (1st Cir.1991). Under the rule, "the government may charge serial transactions, and indict persons jointly, on the basis of what it reasonably anticipates being able to prove against the defendants, measured at the time the indictment is handed up." 938 F.2d at 306. A rational basis for joinder of counts "should be discernible from the face of the indictment." *Id.* The determination of what constitutes "the same act or transaction or...the same series of acts or transactions constituting an offense or offenses", Fed.R.Crim.P. 8(b), involves "a balancing of the benefit to the government of trying together multiple defendants involved in related incidents against each defendant's right to have his own guilt considered separately." *United States v. Arruda*, 715 F.2d 671, 678 (1st Cir.1983).

A defendant challenging joinder under Rule 8(b) "must carry the devoir of persuading the trial court that a misjoinder has taken place." *Id.* The remedy for misjoinder is, of course, severance. *Id.*

 While a conspiracy count "can be a sufficient connecting link between co-defendants and multiple offenses that tips the balance in favor of joinder," the count "must be added in good faith and, judging from the face of the indictment...must have a firm basis in fact." 715 F.2d at 678. A sister circuit also looks to whether there is a substantial identity of facts and participants between the offenses charged to determine whether joinder was proper. *United States v. Castro*, 829 F.2d 1038, 1045 (11th Cir.1987). Though not controlling, the Court finds helpful guidance in the Eleventh Circuit's *Castro* decision, as it provides helpful and well-reasoned guideposts for the joinder analysis. In essence, while "it is not a necessary precondition to joinder that a defendant be involved in each offense charged in an indictment," there must be "some common activity binding the objecting defendant with all the other indictees and that common activity encompasses all the charged offenses." *Natanel*, 938 F.2d at 306.

 In this case, counts 2 and 14 were not properly joined with the rest of the indictment. As recounted in section I, *supra*, counts 2 and 14 charge conspiracies to embezzle and launder funds from the "Plan de Bienestar", UTM Local 1740's

---

**4.** The rule provides:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Fed.R.Crim.P. 8(b). Rule 8(a), on the other hand, governs the joinder in an indictment of multiple offenses against a single defendant. *United States v. Turkette*, 632 F.2d 896, 906–7 (1st Cir.1980), *rev'd on other grounds*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

ERISA-covered health plan.[5] Counts 1 and 15, inturn, allege conspiracies to embezzle and launder the individual union members' union dues.[6] The government's theory is that joinder is proper because "the victims of the conspiracies in Counts One and Fifteen are the same as the victims of the conspiracies in Counts Two and Fourteen: the union members." (Docket No. 320 at 6). Additionally, the government points to the fact that "co-defendant Enrique Sosa–Hernandez, responsible for the picking up of union dues checks that were diverted for unlawful purposes as detailed in Counts One and Fifteen, was employed as the Sub–Director of the 'Plan de Bienestar' looted by defendants in Counts Two and Fourteen." (*Id.*) Finally, prosecutors note that "at the helm of all the interrelated conspiracies lies co-defendant Jorge L. Aponte–Figueroa, who with the assistance of others orchestrated these conspiracies for his personal profit and the profit of others." (*Id.*)

▄▄ Properly read, the indictment charges two unrelated schemes: one a conspiracy to embezzle and launder labor union funds in the form of membership dues ("the union dues conspiracy": Counts 1, 3–7, 15–21), and the other a conspiracy to embezzle and launder funds from an ERISA-covered health care plan ("the Bienestar conspiracy": Counts 2, 8–14). The government purports to join these schemes with tenuous links based on little more than the identity of some participants and the commonality of union members as victims. Mere similarity of acts and participants, however, cannot justify joinder. *United States v. Boylan*, 898 F.2d 230, 245 (1st Cir.), *cert. denied*, 498

U.S. 849, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990). And contrary to the government's arguments, the similarities in acts and participants between the union dues conspiracy and the Bienestar conspiracy are superficial at best, and chimerical at worst. Significantly, not a single overt act or substantive offense alleged in the counts related to the union dues conspiracy was related in any meaningful way (if at all) with the overt acts and substantive offenses alleged in connection with the Bienestar conspiracy. *See Castro*, 829 F.2d at 1045. What is more, the indictment is devoid of any allegation that the participants of the Bienestar conspiracy knew of the methods, goals, members, or even the existence of the union dues scheme. In essence, then, the government has charged two separate conspiracies with, at most, two common participants and, generously construed, one common purpose, i.e. personal enrichment at the expense of UTM Local 1740's assets. Even a cursory reading of the indictment, however, makes hyaline that aside from these superficial commonalities the allegations undergirding the union dues conspiracy are not part of the same act or transaction, or of the same series of acts or transactions, constituting an offense or offenses. Fed.R.Crim.P. 8(b). The two schemes, thus, must be severed. To conclude otherwise would not only require a strained and imaginative reading of the indictment, but would also stretch the limits of Rule 8 to such an extent as to eviscerate its plain text.

Nor do the government's importunements about efficiency and conservation of judicial resources alter the Court's reasoning and conclusion. (Docket No. 320 at 6) Though a system cannot be fair if it is not

---

5. Counts 8–13 are the substantive embezzlement charges associated with the conspiracy alleged in count 2.

6. Counts 3–7 are the substantive embezzlement charges associated with the conspiracy alleged in count 1, and counts 16–20 are the false records charges related to the same conspiracy.

efficient, ours is not one of mere expediency and convenience, but of fundamental fairness and impartiality based on established rules and principles. And in this case those rules and principles dictate that counts 2 and 14–along with their respective substantive counts-be severed from the rest of the indictment so as to preserve the defendants' right to an individualized determination of guilt or innocence. Consequently, trial on this matter shall proceed as follows:

a) *Trial 1:* counts 1, 3–7, and 15–21, along with the relevant forfeiture allegations from counts 22 and 23, on October 23, 2006.

b) *Trial 2:* counts 2 and 8–14, along with the relevant forfeiture allegations from counts 22 and 23, at a date to be set by the Court after the conclusion of trial 1.

### B. *Severance*

■ Even though the remedy associated with misjoinder is the same as that appurtenant to prejudicial joinder, "the rules which govern the two phenomena are analytically distinct and procedurally distinguishable." *Natanel,* 938 F.2d at 308. Assuming lawful joinder under Rule 8, the trial court may still order severance "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government..." Fed. R.Crim.P. 14(a). The defendants bears the burden of proving "prejudice greater than that which necessarily inheres whenever multiple defendants...are jointly tried." *United States v. Walker,* 706 F.2d 28, 30 (1 st Cir.1983). They must show "prejudice so pervasive that a miscarriage of justice looms." *United States v. Pierro,* 32 F.3d 611, 615 (1st Cir.1994).

■ This weighty burden comports with the Supreme Court's directive that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). What is more, because conspiracy cases such as this one "often involve evidence that is admissible against all members of the conspiracy, in the context of conspiracy, severance will rarely, if ever, be required." *United States v. Soto–Beniquez,* 356 F.3d 1, 29 (1st Cir.2003) (internal quotations and citations omitted).

■ Having ruled that counts 2 and 14 were improperly joined with the rest of the indictment under Rule 8(b), the Court need not reach the question whether Rule 14 would require severance in that situation. Co-defendants' motion, however, also requests that Counts 2 and 14 be internally severed, as they allegedly charge two conspiracies each. Nonetheless, co-defendants' argument is unavailing in light of the Court's holding that Counts 2 and 14 charge but one conspiracy each. Section II.A., *supra.* It would strain logic to now hold that counts 2 and 14 should be internally severed, when the Court has already held that they allege only one conspiracy each, thus leaving nothing to sever. In any event, even entertaining defendant's severance importunements on this point the Court would deny the motion. Co-defendants rely primarily-if not exclusively-on the alleged prejudice they would suffer if tried together with co-defendant Rafael Garcia–Perez. Garcia–Perez, they argue, is responsible for a farther-reaching and much more lucrative participation in the conspiracies, which would cause prejudicial evidentiary spill-over that would preclude the jury from individually determining Ramallo–Diaz's and Ramallo, Bros.' guilt or innocence.

 The general rule, of course, is that "those indicted together are tried together to prevent inconsistent verdicts and to conserve judicial and prosecutorial resources." *Beniquez*, 356 F.3d at 29. Since the government in this case must prove the existence of a conspiracy between the co-defendants to convict any and all of them, and because all individuals in counts 2 and 14 were charged as co-conspirators, virtually all of the evidence relating to other defendants will be relevant to and admissible against the Ramallo co-defendants. Where evidence against one defendant is independently admissible against a co-defendant, "the latter cannot convincingly complain of an improper spillover effect." *United States v. O'Bryant*, 998 F.2d 21, 26 (1st Cir.1993). What is more, it is well settled that severance is not automatically required "[e]ven where large amounts of testimony are irrelevant to one defendant, or where one defendant's involvement in an overall agreement is far less than the involvement of others..." *Boylan*, 898 F.2d 230, 246. At this stage, the defendant has not pointed to, and the Court cannot discern, anything beyond the type and degree of prejudice customary in virtually all trials involving multiple defendants and charges. And without such a showing, co-defendants' motion to internally sever counts 2 and 14 must be **DENIED**. To minimize any potential prejudice to any of the co-defendants, however, the Court will employ its usual evidentiary vigilance at trial and make certain through its instructions that the jury is aware of its duty to render an individualized verdict based on the evidence presented against each defendant. *See, e.g. Natanel*, 938 F.2d at 308 (noting "approvingly that the court below minimized any possible prejudice by repeatedly instructing the jury to treat the defendants as individuals and to consider each charge separately.")

## IV. Conclusion

For the reasons elucidated above, co-defendants' motions to dismiss (Docket Nos. 286 and 316) are **DENIED**, while their motion to sever (Docket No. 287) is **GRANTED IN PART AND DENIED IN PART**, as explained in section III., *supra*.

**SO ORDERED.**